Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon C. Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Kenneth J. Grunfeld, Esquire
kgrunfeld@golomblegal.com
Kevin W. Fay, Esquire
kfay@golomblegal.com
David A. Rosenfeld, Esquire
drosenfeld@golomblegal.com
GOLOMB SPIRT GRUNFELD, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Phone: (215) 985-9177
Fax:   (215) 985-4169

*Counsel for Plaintiff and Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE ZELLER,<br><br>Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>v.<br><br>OPTAVIA, LLC and<br><br>MEDIFAST, INC.<br><br>*Defendants*. | Case No. **'22CV434  BTM MSB**<br><br>**Class Action Complaint**<br><br>**Demand for Jury Trial** |

Case No.

# **Table of Contents**

I.    Introduction..............................................................................................................1

II.   Parties....................................................................................................................1

III.  Jurisdiction and Venue............................................................................................2

IV.  Facts ......................................................................................................................2

     A.    California Automatic Renewal Law. ..............................................................2

     B.    Defendants charge consumers for automatically renewing weight loss products, in violation of the Automatic Renewal Law and other consumer protection laws. ...............4

          1.    Defendants use multi-level marketing to sell subscription weight loss products....................................................................................................4

          2.    Defendants' Optavia Premier enrollment process violates the Automatic Renewal Law and misleads reasonable consumers. ...............................5

          3.    Defendants' post-order acknowledgement violates Automatic Renewal Law and misleads reasonable consumers. ............................................8

          4.    Defendants fail to provide a "cost-effective, timely, and easy-to-use mechanism for cancellation."  Instead, Defendants systematically continue to charge consumers who try to delay, cancel, or return shipments. ...................10

          5.    Defendants know that their automatic renewal scheme is misleading consumers. ..................................................................................13

          6.    Defendants misled and harmed Plaintiff Zeller. ...................................16

V.    Class action allegations.........................................................................................17

VI.  Claims ...................................................................................................................20

     Count 1: False Advertising - California Automatic Renewal Law.............................20

     Count 2: Unfair Competition Law (UCL) .............................................................22

     Count 3:  Consumers Legal Remedies Act (CLRA)...............................................24

     Count 4: California Weight Loss Contract Law .....................................................25

     Count 5: Fraud ...................................................................................................27

     Count 6: Unjust Enrichment ...............................................................................28

VII. Prayer for Relief....................................................................................................28

i

Case No.

# I.       Introduction.

1.       Defendants run a multi-level marketing business that sells "Optavia" weight loss products and services (like packaged meals) to consumers.  Parent company Medifast has built Optavia into a $1 billion brand.  This growth, however, is fueled by an illegal automatic renewal scheme.

2.       When consumers purchase any Optavia product, Defendants use dark patterns to enroll consumers in an automatic renewal plan called "Optavia Premier." Once enrolled, consumers are automatically shipped products and charged hundreds of dollars each month.   When enrolling customers, Defendants fail to provide the disclosures required by law and fail to obtain sufficient consent.  As a result, Defendants sign consumers up for automatically renewing charges without their knowledge.  Then, when consumers try to cancel or return products, Defendants give them the runaround and continue to charge their payment methods.

3.       This illegal automatic renewal scheme works. According to Defendants, the average Optavia client spends thirty times more money on diet products compared to industry benchmarks.  More than 75% of Optavia's customers get auto-enrolled for at least one renewal fee and nearly 50% of customers get charged four or more times.

4.       This class action seeks to put an end to Defendants' illegal auto-renewal practices and hold Medifast and Optavia accountable for the damages they have caused and continue to cause.

# II.      Parties.

5.       Plaintiff Jamie Zeller is a citizen of California. She is domiciled in Escondido, California.  She was a customer of Optavia in August 2021, was enrolled in Optavia Premier without her consent, and was automatically charged for recurring shipments.

6.       Defendant Optavia, LLC is a Delaware Limited Liability Company headquartered at 100 International Drive, 18th Floor, Baltimore, Maryland 21202.  Upon information and belief, Optavia is a subsidiary of Medifast, Inc.

Case No.

7.      Defendant, Medifast, Inc. is a Delaware corporation headquartered in Baltimore, Maryland and located at 100 International Drive, 18th Floor, Baltimore, Maryland 21202. Medifast is a weight loss company that was founded in 1980. Medifast's weight loss programs have undergone numerous re-brandings over the years. Upon information and belief, in or about 2016 or 2017, Medifast re-branded its weight loss program from "Take Shape for Life" to "Optavia."

## III.   Jurisdiction and Venue.

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendants.

9.      The Court has personal jurisdiction over Defendants because Defendants purposefully marketed and sold Optavia products to consumers in California, including Plaintiffs.

10.     Venue is proper because a substantial portion of the acts, events, and/or failures to act giving rise to the claims occurred in this District.

## IV.   Facts

### A.      California Automatic Renewal Law.

11.     The California Automatic Renewal Law (ARL) is part of California's False Advertising Law.  The purpose of the ARL is to "end the practice of ongoing" subscription charges "without the consumers' explicit consent for ongoing shipments of a product."  Cal. Bus. & Prof. Code §17600.  To this end, the law makes it illegal for companies to charge consumers for automatically - renewing shipments of goods, unless the company meets strict disclosure requirements.  This includes both pre-purchase and post-purchase disclosures.

### Pre-Purchase Requirements

12.     A company must "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or

Case No.

purchasing agreement is fulfilled and in visual proximity, or, in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer." Cal. Bus. & Prof. Code §17602.   The "automatic renewal offer terms" that must be presented include:

> 1)    "That the subscription or purchasing agreement will continue until the consumer cancels.
>
> 2)    The description of the cancellation policy that applies to the offer.
>
> 3)    The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.
>
> 4)    The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.
>
> 5)    The minimum purchase obligation, if any."
>
> Cal. Bus. & Prof. Code §17601(b)(1)-(5).

13.    A "clear and conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code §17601(c).

14.    After presenting all of this information, the company must then obtain the "consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms."  Id.

**Post-Purchase Requirements**

15.    After the purchase, the company must provide "acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code §17602.  In addition, the

3

Case No.

acknowledgment must provide a "cost-effective, timely, and easy-to-use mechanism for cancellation."  Id.

**B.     Defendants charge consumers for automatically renewing weight loss products, in violation of the Automatic Renewal Law and other consumer protection laws.**

**1.     Defendants use multi-level marketing to sell subscription weight loss products.**

16.     At all relevant times, Defendants offered, via the Optavia website, various food products, plans, and services related to weight loss.  Defendants offered meal plans such as the Optimal Weight 5&1 Plan, Optimal Weight 4&2&1 Plan, and the Optimal Health 3&3 Plan, as well as individual food products referred to as Fuelings, such as Essential Smoky BBQ Crunchers or Jalapeno Cheddar Poppers.  The 5 &1 Plan is pictured below:



17.     Optavia is a multi-level marketing company.  It recruits ordinary consumers to be Optavia "coaches," to market and sell Optavia products to their friends and family.  Optavia's business is driven by automatically-renewing product subscriptions.  According to Defendants' January 2021 investor presentation, subscription-based purchases account for 92% of their total revenue.   In this presentation, Defendants highlight that the average Optavia client spends thirty times more money on diet products

4

compared to industry benchmarks. According to Defendants, more than 75% of Optavia's customers are charged for at least one renewal fee and nearly 50% of customers get charged four or more times.  The reason for these extreme results is Defendants' illegal automatic renewal scheme.

18.     Defendants' automatic renewal scheme is called Optavia Premier. Defendants market Optavia Premier as an exclusive program in which members can "enjoy exclusive perks like extra savings, rewards, free or reduced shipping and more!" Defendants refer to Optavia Premier as an "autoship program" and state that "Premier member orders ship automatically each month, so your progress will never be interrupted or delayed."  While Defendants refer to Optavia Premier as an "autoship program" it is in every respect an automatically renewing subscription and constitutes an automatic renewal and/or continuous service plan or arrangement under Cal. Bus. & Prof. Code §17601. The cost of an Optavia Premier membership can and does reach costs totaling $500 per month.

**2.       Defendants' Optavia Premier enrollment process violates the Automatic Renewal Law and misleads reasonable consumers.**

19.     Consumers purchase Optavia products in two ways.  First, the consumer can buy the products themselves, from the Optavia website.  Second, a coach can take a consumer's payment information and place an order for the consumer.  Through both purchase methods, Optavia systematically enrolls consumers in its Optavia Premier program, in violation of the Automatic Renewal Law and other consumer protection laws.

20.     On the Optavia website, Defendants' automatic renewal program works as follows.  Any consumer who selects a product for purchase is directed to a checkout page on the Optavia website, illustrated below:

5

Case No.

21.     The purported disclosures fail to comply with the Automatic Renewal Law, in several ways.  The enrollment process also misleads reasonable consumers into thinking that they are not being signed up for auto-renewing shipments and charges.

22.     To begin, the option to enroll in Optavia Premier box is pre-checked.  This is the opposite of how an affirmative consent box is supposed to work.  It is designed to, and does, cause reasonable consumers to miss the fact that they are being auto-enrolled. In order to unenroll from Optavia Premier, the consumer must affirmatively uncheck the box. In other words, instead of affirmative consent (which is legally required), the process requires affirmative opt-out (which is illegal).

6

Case No.



23.     In addition, as illustrated above, the information about the Optavia Premier program is in the smallest font on the page, set off to the side, and with the least contrast against the background compared to all the other text.  The page is designed so that a reasonable consumer will click the prominent "Checkout" button without noticing that they are being signed up for automatically renewing shipments and charges.

24.     Next, regardless of the Optavia item that the consumer selects to purchase, the relevant portion of the checkout page presents the consumer with a banner stating "Congratulations! You are now enrolled in OPTAVIA Premier."



25.     This box confusingly suggests to the consumer that they have already been enrolled in Optavia Premier, before Defendants have obtained any kind of consent whatsoever.  Again, this is the opposite of clear and conspicuous, affirmative consent.

26.     Beyond this, the page does not disclose the amount of the charge that will be recurring on a month-to-month basis, the length of time that the auto-renewal subscription will remain in place, or the minimum purchase.

27.     Once the consumer clicks the "Checkout" button, the consumer is redirected to a webpage to complete their purchase where, among other things, the consumer creates a username and password, enters a delivery address, and inputs their payment method. Notably, once the consumer clicks the "Checkout" button, no subsequent webpage for completion of the purchase discloses or mentions the consumer's enrollment in Optavia Premier or its terms and conditions. Once the consumer inputs the requested information to complete the purchase, the consumer is enrolled in Optavia Premier and, every month

Case No.

from that date forward, Defendants will automatically charge the consumer's payment method and ship products.

28.     When customers are enrolled through coaches, the disclosures are even more deficient.  Coaches systematically fail to even disclose to consumers that they are being auto-enrolled, much less comply with the detailed requirements of the Automatic Renewal Law.  This is because Optavia's coach training materials systematically (and intentionally) fail to train coaches to comply with the Automatic Renewal Law.

29.     In sum, either way a consumer buys Optavia products, Defendants fail to comply with the Automatic Renewal Law and mislead reasonable consumers about whether they are being signed up for automatic, monthly charges.

**3.     Defendants' post-order acknowledgement violates Automatic Renewal Law and misleads reasonable consumers.**

30.     After consumers are enrolled in Optavia Premier, Defendants send consumers an email confirming their purchase (the "Acknowledgement Email").  The subject line of the Acknowledgement Email states: "Optavia Order confirmation:" with an order number listed. A screen shot example of the Acknowledgement Email appears as follows:

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



31.     The Acknowledgement Email does not contain any information to inform the consumer about Defendants' auto-renewal policy or cancellation policy. Most notably, the Acknowledgement Email does not inform the consumer that she has enrolled in Optavia Premier and that it is a membership program that will charge her payment method on a recurring and monthly basis. To the contrary, the Acknowledgement Email appears to indicate that the consumer is not an Optavia Premier member as the body of the email states: "Don't miss out - thousands of people like you are already benefiting from OPTAVIA Premier membership." The Acknowledgement Email further states, "Don't forget, if you're an OPTAVIA Premier member, your order qualifies for Rewards and even free shipping on qualifying orders." Given these confusing and misleading statements, a reasonable consumer would conclude that they are not an Optavia Premier member. Additionally, the Acknowledgement Email does disclose the following information:

9

1

2     1)     "That the subscription or purchasing agreement will continue until the consumer cancels.

3     2)     The description of the cancellation policy that applies to the offer.

4     3)     The recurring charges that will be charged to the consumer's credit or debit card

5     or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the

6     amount to which the charge will change, if known.

7     4)     The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

8

9     5)     The minimum purchase obligation, if any."
Cal. Bus. & Prof. Code §17601(b)(1)-(5).

10

11     32.     As such, the Acknowledgement Email fails to "include[] the automatic

12 renewal offer terms … , cancellation policy, and information regarding how to cancel in a

13 manner that is capable of being retained by the consumer" in violation of Section

14 17602(a)(3).

15     **4.     Defendants fail to provide a "cost-effective, timely, and easy-to-**

16     **use mechanism for cancellation." Instead, Defendants**

17     **systematically continue to charge consumers who try to delay,**

18     **cancel, or return shipments.**

19     33.     As described above, the ARL requires that Defendants conspicuously

20 present their full cancellation policy at the time of purchase and provide a post-sale

21 acknowledgment identifying an easy and efficient mechanism for consumers to cancel

22 their subscriptions. Defendants' website and Acknowledgement Email fail to satisfy

23 either of these requirements. Instead, Defendants systematically make it confusing and

24 difficult to cancel Optavia Premier subscriptions and continue to charge consumers who

25 have attempted to cancel.

26     34.     With respect to cancellation, the relevant portion of the checkout page states:

27 "I can modify my order or cancel my membership at any time by calling 1-888-

28 OPTAVIA or by logging into my online Optavia account." This vague description on

Case No.

cancellation procedure is not a sufficient disclosure. Moreover, BBB complaints show that canceling Optavia's automatic renewals can be difficult, frustrating, and time consuming. Worse, Optavia fails to honor requests to delay, refund, or cancel orders, and continues to fraudulently charge consumers.

35.    The following screenshots of customer complaints from the BBB website are illustrative:

12/01/2021

This company puts you automatically on an autoship policy. The order has not even shipped and was in process just today. I called and wanted them to refund my money and they were not helpful. I explained I do not want my account on autoship and if the order has not shipped they should be able to cancel the order. I was given the run around about opening a case and having to do a return to distributor on their end and even so it wasn't 100% guaranteed to get my money back. If they are doing an "in house" return then I should get my money!!! They shouldn't tie peoples money up with all of this back and forth!!! It's ridiculous!! I just want the money taken from my account put back in as the order has not even SHIPPED to me at all!!!

**Desired Outcome**
Refund

09/28/2021

On June 30th 2021 Optavia shipped a box of products to my home which was received on July 12th. the cost of the box was $299.67. I intern cancelled my services with Optavia and returned the box to them. My bank card was not charged the $299.67 at the time. The box was returned via USPS with a tracking #XXXX XXXX XXXX XXXX XXXX XX and received by them on July 26, 2021 at 11:30. On September 27, 2021 I received an e-mail that Optavia stating that they were going to charge me for the 299.67. I called them and gave them the tracking # but they still have made attempts to charge my card. I have called 3 times only to be told they have forwarded the case to the operations department without the case being resolved. I want my card information removed from Optavias system and for them to stop attempting to put this charge on my card. My bank has been made aware. At 9:30am 9/28 Optavia made another attempt to charge my card.

**Desired Outcome**
No further contact by the business

11

Case No.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07/20/2021

I was sent an email on on July 4th that my box was to ship. I called customer service and asked that they cancel cancel this shipment. I went in and canceled my account out. I was assured that The shipment would be stopped and the money would not come from my account. On July 17th I received an email that my Box was shipping. I called customer service was told they would try to stop the shipment. July 18th, the money was taken out of my account, but the tracking number showed that it had not yet shipped. I called customer service. Spoke w a supervisor, she samtated they would escalate the issue w their operations support team. 7/20, called again. Box still showing as label being created. Being told they still need to try to intercept box, but can't put money back into my acct. Even though, bills i paid are bouncing because they took the money w out my authorization or w out me receiving product. They give me the same scripted answer when i call. I need help!

**Desired Outcome**
Refund

07/16/2021

Date of transaction: 7/16/21 I ordered a nutrition program from Optavia 5/13/21 for $364. On 7/1/21 I canceled my future orders. I noticed that $419 was removed from my bank account from Optavia. I have been on the phone with their customer support all morning and the order HAS NOT even shipped yet and they refuse to issue a refund. Please help

**Desired Outcome**
Refund

07/14/2021

In lake June 2021 I received notice that my order was going to ship in seven days. I logged into my account and canceled the order, only to get notification on July 1, 2021, that my order is shipping. I called that morning and talked to client support, which told me they are canceling my order and future repeat orders. At that time I had not been charged. Today, July 14, 2021, I was charged $633.61 for the order I canceled. When I called Client Support again today I was told they need to get the package, which has not been mailed, back before they can refund the money. 1) The order was canceled two weeks ago, and 2) the order still has not been shipped or filled as only a tracking label has been created. They cannot give me a time or estimate of when this will be fixed, even after it should not have happened.

**Desired Outcome**
Refund

Case No.

07/02/2021

On June 30, 2021 at 10:00am a health coach from Optavia sold me on their food and health plan, she told me that my credit card would not be charged for 3 weeks when the food was mailed to me. She also said that I could cancel my order at anytime. On the same day, June 30, 2021 at 2:58pm I let the health coach know that I did not want the food and I wanted to cancel my order. The next morning, July 1, 2021 at 9:21am the health coach told me that my order could not be canceled. I then checked with my credit card company and my card was already charged but a customer representative from Optavia told me that my order was not shipped. Now I have to wait 3 weeks, receive the order, and then at my expense (because Optavia does not send prepaid return labels) return it and wait for a refund. I want my order canceled now and my credit card refunded- as it should not have been charged in the first place because nothing was shipped to me. This company is a scam to take my money.

**Desired Outcome**
Refund

\* \* \*

36.    In sum, for every subscription product purchased from the Optavia website, Defendants fail to make the legally required disclosures, fail to obtain affirmative consent for automatic recurring charges, misrepresent and conceal material facts regarding Optavia Premier, and mislead reasonable consumers into thinking that they are simply making a one-time purchase.  Defendants then make it difficult to cancel and fraudulently continue to charge consumers who seek refunds or cancellation.   And as described next, Defendants do all of this knowingly.

### 5.    Defendants know that their automatic renewal scheme is misleading consumers.

37.    Defendants are well aware that their auto-enrollment scheme is deceiving consumers. Through the BBB, Optavia has received hundreds of complaints from customers.

38.    The complaints listed on the BBB website echo Plaintiff's experience, as consumers complain that they were unaware that they would be auto-enrolled in a monthly subscription plan.  The following complaints are illustrative:

Chayah M
★☆☆☆☆                                                    12/02/2021

Case No.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This company's dark pattern practices online results in holding your personal information and credit info hostage leading to unwanted monthly orders. I've repeatedly requested my information be deleted from their database only to be given a link to go to, on their policy page, where you have to sift through paragraphs of irrelevant information to find the place to then fill out another form that creates a "case #" to request your credit card and contact info be removed from their database. Despite cancelling an order within 24 hours of my initial introduction to this company, I had another order placed on my credit card 30 days later that I then had to request be cancelled again and tried to get my information removed from their system only to be emailed the same policy page link to ask for my information to be removed again. I have stated unequivocally to this company that I will never do business with them yet they continue to email me. This is a terrible company and there should be federal legislation against this type of consumer abuse and privacy violations.

05/25/2021

My coach placed my order via debit card on May 15th for a $416 dollar kit. My kit still says it's "in processing" but my BF ordered after me (a week later) and his has been shipped. I called customer service and was told " we are experiencing demands we can't meet and deliveries are taking longer than usual. Most of our orders are being shipped out without tracking" So, I paid $416 and have no idea if it shipped or not and who knows where it is? I went through my bank statements and it doesn't even show charged even though I was told it was? Best thing? I found out that I was signed up for automatic shipping/bill and I wasn't even informed of this? My next scheduled shipment is June 11th and I haven't even received my first box but they have me already scheduled? I have no food and no way to track where it is but my bf who orders after me has tracking and his box??? Help?

**Desired Outcome**
Contact by the business

05/03/2021

I did not sign up for "autoship" and feel this business practice is deceptive. I have requested for order #********** to be canceled and NOT SHIPPED while it is still showing as in process and has, in fact, not already shipped. The "customer service rep" denied saying there is simply no way to do that. That she would send me a return label simply so that I have to pay for shipping to Optivia and again to ship it back. I am requesting for the $341.59 to be immediately refunded to my credit card and if they continue to refuse to cancel the order, that they send me a prepaid shipping return label for this false shipment to be returned. Additionally, I am requesting for my credit card information to be removed from the Optivia database to ensure no further unauthorized charges can be made to my account.

**Desired Outcome**
I am requesting for the $341.59 to be immediately refunded to my credit card and if they continue to

14

Case No.

Saadya H

★☆☆☆☆                                          07/08/2020

Optavia products cause severe GI issues which aren't resolved by discontinuing their snack
bars or fuel bars. The ingredients in their products have caused severe GI issues starting from
day 2 and day 4th on their products was full blown symptoms that impaired functioning for that
day.Contacting the agency has long wait time which was already mentioned by their rep. One
wonders why the long wait time is predicted! Their selling involves zero disclosure as to what
the company name is, how much would be charged as a whole to one's cc and enrolling in
automatic renewal of products without client's consent. To cancel a cc on file isn't an option on
their website either. I was made aware by my cc company when I lost my wallet and found out
that my cc info was put on default on company's website and that I had no way of cancelling
my cc info. I do not appreciate being signed up for something based on trusting a rep and
given zero information/disclosure on company name, and cost of products in order to form my
own informed decision in the end.

06/12/2020

Billed for an order i did not want. They did auto re order and charged me $447 that i did
not authorize or want. They refused to cancel the order. So i had my bank dispute the
charge. The charge was dropped from my pending. That was Monday 6/8. I woke up
today with a new charge for the same order.

**Desired Outcome**
I want my money back and for them to not do this to other people.

04/12/2019

Company sells products, with a return guarantee. Still waiting for a return filed months
ago... This is easy, their "coach" sets up their "auto order" system. It is auto populated to
continue sending you random products... it "auto ordered" us over $500 worth of food,
that we did not want... Nobody will answer the phone, and nobody will give us our money
back. This is fraud, pure and simple...

**Desired Outcome**
A full refund.

Case No.

03/05/2019

Automatically charged for a order I did not make or want On February 4th a order was placed by my Optavia coach ( can provide name if needed) for my starter kit costing $356.15. I was told he had to place my first order for me. Never was I told my card would automatically be charged every month after. On March 4th I received a email at 3am that I was charged for my second order #*********** costing 425.28 which I did not place or approve. I went online and got into my profile which my coach had set up and cancelled the order at 4:56 am cancellation #*********. That same morning I called the 888-******** which gave a busy signal. I called my Optavia coach and informed him and he said he was sorry and would also call to have my order cancelled. I called the same number multiple times till I got through after holding for 1 hour and 47 minutes. I spoke to Marquis who could not give a last name. He said he saw the order was placed at 3am that morning and was going to put in a form to have the order canceled but wasn't sure if it would be in time. He said I was going to receive a email that this cancellation was made. After not receiving the email today I called back and again got a busy signal. After holding for 1 hour and 25 minutes I spoke to Marquis again and he then told me they don't send out emails when a RT form is sent. I asked to speak to a supervisor and spoke with Amika who said I would only receive a email if the cancellation was successful or to let me know if it was not. I asked to have a second email added to my information because I seemed to not be receiving any emails besides when being charged. I also asked Amika for a direct email to Optavia and she said she did not have one. They have you send emails through their website which leaves you no proof of ever trying to contact them. This company is clearly a pyramid and scam company . The coaches make money off everyone they get to join Optavia and that is why they place your order and don't tell you of future charges. How can a order that has only been placed hours before being cancelled not be cancelled on the company's end. Why are there not emails provided or working phone numbers. They make it as hard as possible to get your refund. After reading multiple complaints which I had wish I had seen prior. I see that their next move is to still send the order and then when you return it say they never got it. This company needs to be shut down so people don't continue to be scammed.

**Desired Outcome**
All I want is my order to be cancelled. I don't want it sent and then have to play their return game. I want my full refund of $425.28 asap.

39.     There are hundreds more similar complaints on the BBB website, and many of these complaints contain various responses from Optavia, which demonstrates Optavia's knowledge of the problems.

40.     Thus, after receiving hundreds of complaints from customers who were misled about Optavia's auto-recurring charges, Defendants knew or should have known that they were misleading consumers.

### 6.     Defendants misled and harmed Plaintiff Zeller.

41.     The experience of Plaintiff Jamie Zeller is typical of other Optavia customers harmed by Defendants' auto-enrollment scheme.

42.     Plaintiff Zeller purchased the Optavia Essential Optimal Kit (5&1 Plan) from the Optavia Website on about July 3, 2021, through her coach. She was auto-enrolled in Optavia Premier without her knowledge or consent (much less the required

16

affirmative consent).  At the time of purchase and enrollment, Plaintiff Zeller provided her credit card information to Defendants, via her coach.

43.     After Plaintiff Zeller completed her initial purchase, Defendants sent Plaintiff Zeller an Acknowledgement Email confirming that Defendants had processed a charge of $409.60 to Plaintiff Zeller's credit card.  Plaintiff Zeller's Acknowledgement Email is misleading and defective in several respects.  As illustrated above, it does not disclose the renewal policy, or the renewal terms, or the amount of the monthly charge, or the length of time that auto renewal will continue.  Plaintiff Zeller's Acknowledgement Email also failed to provide notice of the cancellation policy for Optavia Premier.

44.     As a result of Defendants' misrepresentations and deficient disclosures, when Plaintiff Zeller was enrolled, she was unaware that Defendants had enrolled her in an "automatic renewal" program under which she would be charged for product each month. Plaintiff believed she was just signing up for a one-time purchase.

45.     After Plaintiff Zeller's initial purchase in July 2021, Defendants began automatically charging her for renewals.  Around September 27, 2021, Defendant charged her $202.27 for additional food.

46.     If Plaintiff Zeller had known that Defendants were automatically enrolling her in a subscription program with monthly recurring charges to her Payment Method, she would not have purchased any products from Optavia (much less recurring purchases).

47.     In or around November 2021, Plaintiff sought to cancel her Optavia Premier membership in order to cease the automatically renewing and recurring charges.  Optavia's online cancellation procedure was a multi-step process that was needlessly time-consuming.  On or around December 2, 2021, Plaintiff received confirmation of cancellation.

**V.     Class action allegations.**

48.     Plaintiff brings this action on behalf of a class of similarly situated individuals.  The Class is defined as follows:

Case No.

All Optavia/Medifast customers in the state of California who were automatically enrolled in Optavia Premier and were charged at least one renewal fee by Defendants, within the governing statute of limitations period.

49.     Excluded from the Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest. Also excluded are all federal, state and local government entities; and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff.

**Numerosity**

50.     Plaintiff does not know the exact size of the Class, since this information is in the exclusive control of Defendants. Plaintiff believes, however, that based on Defendants' assertions, the Class encompasses hundreds of thousands of individuals whose identities can be readily ascertained from Defendants' records. Accordingly, the members of the Class are so numerous that joinder of all such persons is impractical.

**Ascertainability**

51.     The Class is ascertainable because its members can be readily identified using data and information kept by Defendants in the usual course of business. Plaintiff anticipates providing appropriate notice to each Class member, in compliance with all applicable federal rules.

**Typicality**

52.     Plaintiff Zeller is a typical and adequate class representative. Her claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class. Plaintiff and the other members of the Class were subject to the same or similar deceptive marketing and billing practices.  Further, Plaintiff and members of the Class sustained substantially the same injuries and damages arising out of Defendants' conduct, including unjust renewal fees.  Plaintiff will fairly and adequately protect the interests of all Class members. Plaintiff has retained competent and experienced class action attorneys to represent her interests and those of the Class.

18

Case No.

*Commonality and Predominance*

53.    Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members, and a class action will generate common answers to questions that drive the resolution of this case.  For example, the following questions:

- Whether Defendants' conduct constitutes unfair, unlawful and/or fraudulent practices prohibited by the laws of California;
- Whether Defendants were unjustly enriched as a result of their conduct;
- The extent of class-wide injury and the measure of damages for those injuries.
- Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices.

*Superiority*

54.    A class action is superior to all other available methods for resolving this controversy because:  i) the prosecution of separate actions by Class members will create a risk of adjudications with respect to individual Class members that will, as a practical matter, be dispositive of the interests of the other Class members not parties to this action, or substantially impair or impede their ability to protect their interests; ii) the prosecution of separate actions by Class members will create a risk of inconsistent or varying adjudications with respect to individual Class members, which will establish incompatible standards for Defendants' conduct; iii) Defendants have acted or refused to act on grounds generally applicable to all Class members; and iv) questions of law and fact common to the Class  predominate over any questions affecting only individual Class members.

55.    Further, the following issues are appropriately resolved on a classwide basis under Fed. R. Civ. P. 23(c)(4):

- Whether Defendants' conduct constitutes unfair, unlawful and/or fraudulent practices prohibited by the laws of California;

19

- Whether Defendants were unjustly enriched as a result of their conduct;

- Whether Class members have been injured by Defendants' conduct;

- Whether any or all applicable limitations periods are tolled by Defendants' acts;

- Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices; and

- The extent of class-wide injury and the measure of damages for those injuries.

56.   Accordingly, this action likely presents no difficulties in management that would preclude maintenance as a class action and satisfies the requirements set forth under Fed. R. Civ. P. 23(a), 23(b), and 23(c)(4).

## VI.   Claims

### Count 1: False Advertising - California Automatic Renewal Law

57.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58.   Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

59.   As alleged in detail above, Defendants violated California Automatic Renewal Law in numerous, independent ways:

- Defendants failed to present the terms of their automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual proximity to the request for consent to the offer, as required by Cal. Bus. & Prof. Code §§ 17602(a)(1);

- Defendants charged Plaintiff's and the Class's credit or debit cards, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or

20

continuous offer terms, as required by Cal. Bus. & Prof. Code §§ 17602(a)(2);

- Defendants failed to provide an acknowledgment that includes the automatic renewal offer terms or continuous offer terms, cancellation policy, and information regarding how to cancel, and to allow Plaintiff and the Class to cancel, the automatic renewal or continuous service before they paid for it, as required by Cal. Bus. & Prof. Code §§ 17602(a)(3);

- Defendants failed to provide a cost-effective, timely, and easy-to-use mechanism for cancellation described in Cal. Bus. & Prof. Code §§ 17602(a)(3), as required by Cal. Bus. & Prof. Code §§ 17602(b);

60.     As a result of Defendants' misconduct, pursuant to Cal. Bus. & Prof. Code §17603, all recurring Optavia Premier shipments are treated as unconditional gifts, and Plaintiff and the Class are entitled to restitution of all amounts that Defendants charged or caused to be charged to Plaintiff's and Class members' during the applicable statute of limitations and continuing until Defendants' statutory violations cease.

61.     As a result of Defendants' misconduct, pursuant to Cal. Bus. & Prof. Code §17535, Plaintiff and the Class are entitled to an injunction (a) enjoining Defendants from making automatic renewal offers that do not comply with California law, (b) from making charges to customers' payment methods without prior affirmative consent to an agreement containing "clear and conspicuous" disclosures of automatic renewal or continuous service offer terms, (c) enjoining Defendants from making automatic renewal offers that fail to provide an acknowledgment that includes "clear and conspicuous" disclosure of automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, and (d) enjoining Defendants from making automatic renewal offers that fail to provide an online, easy-to-use mechanism for cancellation.

62.     Pursuant to Cal. Bus. & Prof. Code §17535, this Court has the power to award such equitable relief, including but not limited to, an order declaring Defendants'

21

Case No.

auto-renewal practices to be unlawful, an order enjoining Defendants from engaging in any such further unlawful conduct, and an order directing Defendants to refund to the Plaintiff and the Class all monthly fees wrongfully assessed and/or collected on its auto-renew subscription plan.

### Count 2: Unfair Competition Law (UCL)

63.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

64.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

65.     Cal. Bus. & Prof. Code §17200, et seq. (the "UCL") prohibits acts of "unfair competition," including any unlawful, deceptive and unfair business acts or practices.

***Unlawful***

66.     Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.  Defendants committed unlawful practices because, as alleged above and incorporated here, they violated California Automatic Renewal Law.  In addition, as alleged below and incorporated here, Defendants violated the CLRA.

***Unfair***

67.     As alleged in detail above, Defendants committed "unfair" acts by deceiving consumers into signing up for auto-recurring shipments, making it difficult to cancel, and continuing to charge consumers who sought refunds or cancellations.

68.      The harm to Plaintiff and the Class greatly outweighs the public utility of Defendants' conduct.  There is no public utility to deceptive automatic renewal practices. This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading auto-renewal practices only injure healthy competition and harm consumers.

22

Case No.

69.     Plaintiff and the Class could not have reasonably avoided this injury.  As alleged above, Defendants' representations were deceiving to reasonable consumers like Plaintiff.  There were reasonably available alternatives to further Defendants' legitimate business interests, such as complying with the Automatic Renewal Law and providing appropriate disclosures and an effective cancellation policy.

***Deceptive***

70.      Defendants' acts, omissions, nondisclosures, and misleading statements as alleged in detail above, were false, misleading, and/or deceptive to reasonable consumers.

71.     Plaintiff saw and relied upon Defendants' misleading representations and omissions, as detailed above.  Classwide reliance can be inferred because Defendants' misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Optavia products.

72.     Defendants' unlawful, unfair, and deceptive conduct was a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

73.     As a result of Defendants' unlawful, deceptive, and unfair business practices, Plaintiff and the Class have suffered an injury and have lost money in an amount to be determined at the trial of this action.

74.     Pursuant to Cal. Bus. & Prof. Code §17203 Plaintiff and the other members of the Class are entitled to an order: (1) requiring Defendants to make restitution to Plaintiff and the Class; (2) enjoining Defendants from charging Plaintiff's and Class members' payment methods until such time as Defendants obtain the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosures of all automatic renewal or continuous service offer terms; and (3) enjoining Defendants from making automatic renewal or continuous service offers in the State of California that do not comply with California's Automatic Renewal Law.

Case No.

## **Count 3:  Consumers Legal Remedies Act (CLRA)**

75.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

76.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

77.     The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. (the "CLRA"), prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

78.     Plaintiff and the Class members are "consumers" within the meaning of Cal. Civ. Code §1761(d) in that Plaintiff and the Class members sought or acquired Defendants' services for personal, family, or household purposes.

79.     Optavia food products are "goods" within the meaning of Cal. Civ. Code §1761(a).

80.     Defendants' weight-loss coaching program constitute "services" within the meaning of Cal. Civ. Code §1761(b).

81.     The purchases by Plaintiff and Class Members are "transactions" within the meaning of Cal. Civ. Code §1761(e).

82.     As alleged in detail above, Defendant violated Cal. Civ. Code §1770, subdivisions (a)(5), (a)(9), (a)(14) and (a)(16) by, inter alia, representing that Defendants' goods and services have certain characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

83.     As a direct and proximate result of Defendants' violations of the CLRA, Plaintiff and the Class were wrongfully charged illegal renewal fees.

Case No.

84.     Defendants' conduct alleged herein was undertaken by Defendants knowingly, willfully, and with oppression, fraud, and/or malice, within the meaning of Cal. Civ. Code §3294(c).

85.     Plaintiff and members of the Class seek an injunction requiring Defendants to cease their unlawful practices.

86.     On about February 21, 2022, Plaintiff provided written notice pursuant to § 1782 of the CLRA. Defendants failed to rectify or agree to rectify the unlawful acts detailed above within 30 days, thus Plaintiff and the Class are entitled to actual, punitive, and statutory damages, as appropriate, as well as any other remedies the Court may deem appropriate under Cal. Civ. Code §1750 et seq.

## Count 4: California Weight Loss Contract Law

87.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

88.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

89.     Plaintiff's subscription with Optavia is a "weight loss contract" as used in Cal. Civ. Code §1694.5 because it is a membership to a weight loss program, formed for the purposes of providing instruction, counseling, supervision, or assistance in weight reduction, body shaping, diet, and/or eating habits.

90.     Defendants violated Cal. Civ. Code §1694.7(b) because the subscriptions entered into by Plaintiff and the Class did not contain, on their face and in close proximity to the space reserved for the signature of the buyer (i.e., in close proximity to the "Checkout" button on the Checkout Page), a conspicuous statement in a size equal to at least 10-point boldface type, as follows: "You, the buyer, may cancel this agreement, without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of this contract, excluding Sundays and holidays. To cancel this agreement, mail or deliver a signed and dated notice, or send a

Case No.

telegram which states that you, the buyer, are canceling this agreement," or words of similar effect.

91.    Plaintiff was also not made aware, at the point of purchase or any time during the pendency of her Optavia subscription thereafter, of her right to cancel her Optavia subscription "without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of [] contract [formation]" or of how to go about invoking that right.

92.    Defendants also violated Cal. Civ. Code §1694.7(c) because the subscription entered into by Plaintiff and the Class did not contain, "on the first page, in a type size no smaller than that generally used in the body of the document, the name and address of the weight loss program operator to which the notice of cancellation is to be mailed; and the date the buyer signed the contract."

93.    Defendants also violated Cal. Civ. Code §1694.7(d) because by enrolling Plaintiff into perpetually auto-renewing subscriptions they violated the requirement that "[t]he services to be rendered to the buyer under the contract shall not extend for more than three years after the date the contract is entered into."

94.    As a direct result of Defendants' unlawful conduct described above, Plaintiff suffered economic injury. Had Optavia's checkout page complied with California's Weight Loss Contracts Law, Plaintiff would have been able to avoid financial injury.  If Defendants had provided the required disclosures, including disclosing the auto-renewal, Plaintiff would have cancelled her subscription within the grace period.  However, Defendants did not comply with California's Weight Loss Contract Law, thereby harming Plaintiff and the Class.

95.    Defendants' violation of Cal. Civ. Code§§ 1694.7(b)–(d) renders the subscriptions entered into by Plaintiff and the Class void and unenforceable such that they may be cancelled at any time. Cal. Civ. Code §1694.7(e); Cal. Civ. Code §1694.9(a); Cal. Civ. Code §1694.9(d).

Case No.

96.     Further, Defendants' unlawful conduct was willful and/or fraudulent in that they knew or should have known that their enrollment process features misleading statements and outright omissions of material information mandated by both Cal. Civ. Code §1694.7(b) and California's Automatic Purchase Renewal Statute, Cal. Bus. & Prof. Code §§17601, et seq., that such misrepresentations and/or omissions would and in fact did induce subscribers, including Plaintiff and the Class, to enter into weight loss subscriptions with Optavia. As such, Defendants' willful and/or fraudulent conduct provides an independent basis for finding that Defendants' subscriptions with Plaintiff and the Class are void and unenforceable such that they may be cancelled at any time. Cal. Civ. Code §1694.9(b).

97.     As a result, Plaintiff and the Class seek recovery of actual damages including all membership or installment fees paid by Plaintiff and the Class under their void and unenforceable subscriptions with Optavia, the trebling thereof, and reasonable attorneys' fees. Cal. Civ. Code §1694.9(c).

## Count 5: Fraud

98.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

99.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

100.    As alleged in detail above, Defendants made a number of materially misleading statements and/or omissions in the marketing and billing of its monthly subscriptions.

101.    In deciding to purchase consumable products from Defendants, Plaintiff and the Class reasonably relied on these misrepresentations and omissions to form the mistaken belief that they were making a one-time purchase, and that they could easily cancel.

27

Case No.

102.   As alleged above, Defendants' fraudulent conduct was knowing and intentional. The omissions and misrepresentations made by Defendants were intended to induce and actually induced Plaintiff and Class Members to become Optavia Premier customers. Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important to their purchase decision.

103.   Defendants' fraud caused damage to Plaintiff and the Class, who are entitled to damages and other legal and equitable relief as a result.

104.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## Count 6: Unjust Enrichment

105.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

106.   Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

107.   As alleged in detail above, by reason of Defendants' wrongful conduct, Defendants received a direct and unjust benefit, at Plaintiff's expense.  Defendants have benefited from receipt of improper subscription funds, and under principles of equity and good conscience, Defendants should not be permitted to keep this money.

108.   It would be unjust and inequitable for Defendants to retain the benefits of their conduct without restitution to Plaintiff and the Class.  Accordingly, Plaintiff and the Class are entitled to restitution.

**VII.   Prayer for Relief.**

109.   Plaintiff seeks the following relief on behalf of herself and the Class:

28

Case No.

- An order certifying the asserted claims, or issues raised, as a class action;
- An order appointing Plaintiff as Class representative, and designating Golomb Spirt Grunfeld and Dovel & Luner as Class Counsel;
- A judgment in favor of Plaintiff and the Class on the claims and issues raised;
- Restitution, disgorgement, and other just equitable relief;
- Am order granting all appropriate injunctive relief;
- Compensatory damages, the exact amount of which is to be determined at trial;
- An award of punitive damages and enhanced damages as allowed by statute;
- Pre and post judgment interest, costs, reasonable attorneys' fees, costs, and expenses; and
- All such other relief as the Court deems appropriate.

Dated: April 1, 2022                    Respectfully submitted,

                                        By: */s/ Jonas B. Jacobson*

                                        Jonas B. Jacobson (Cal. Bar No. 269912)*
                                        jonas@dovel.com
                                        Simon C. Franzini (Cal. Bar No. 287631)*
                                        simon@dovel.com
                                        DOVEL & LUNER, LLP
                                        201 Santa Monica Blvd., Suite 600
                                        Santa Monica, California 90401
                                        Telephone: (310) 656-7066
                                        Facsimile: (310) 656-7069

                                        *Admitted to the S.D. Cal. Bar.

                                        Kenneth J. Grunfeld, Esquire**
                                        kgrunfeld@golomblegal.com
                                        Kevin W. Fay, Esquire**
                                        kfay@golomblegal.com

29

Case No.

David A. Rosenfeld, Esquire**
drosenfeld@golomblegal.com
GOLOMB SPIRT GRUNFELD, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Phone: (215) 985-9177
Fax:   (215) 985-4169

**Pro Hac Vice forthcoming.

*Counsel for Plaintiff and Proposed Class*

30

Case No.