1
2
3
4
5
6
7               UNITED STATES DISTRICT COURT
8              SOUTHERN DISTRICT OF CALIFORNIA
9
10   JAMIE ZELLER, and ANGELICA          Case No.:  22-cv-434-DMS-MSB
     ALPERT,
11                                        **ORDER GRANTING IN PART AND**
     Individually, and on Behalf of All Others   **DENYING IN PART DEFENDANT**
12   Similarly Situated,                  **OPTAVIA, LLC'S MOTION TO**
                                          **DISMISS**
13                 Plaintiffs,
14          v.
15   OPTAVIA, LLC and MEDIFAST, INC.,
16                 Defendants.
17
18          This case comes before the Court on Defendant Optavia LLC's ("Defendant")
19   motion to dismiss Plaintiffs Jamie Zeller's and Angelica Alpert's ("Plaintiffs") claims
20   under the California Automatic Renewal Law, Unfair Competition Law, Consumer Legal
21   Remedies Act, and California Weight Loss Contract Law, and under common law theories
22   of fraud and unjust enrichment.  (ECF No. 18.)  Defendant moves to dismiss Plaintiffs'
23   claims on the grounds that Plaintiffs lack standing under Federal Rule of Civil Procedure
24   12(b)(1), fail to state a claim under Rule 12(b)(6), and fail to satisfy a heightened pleading
25   standard under Rule 9(b).  Defendant also requests the Court to judicially notice certain
26   extra-pleading materials.  (ECF no. 18-9.)  Plaintiffs filed an opposition to Defendant's
27   motion and request for judicial notice, and Defendant filed a reply.  (ECF Nos. 23, 24, 28.)
28   Plaintiffs filed a sur-reply, and Defendant filed a response to the sur-reply.  (ECF Nos. 33,

35.)  The motion is fully briefed and submitted.  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss.

## I.

## BACKGROUND

The Optavia Premier Program ("Optavia Premier" or "Premier Program") is an auto-ship program for Optavia meal plan products.  Participants can enroll in the Premier Program either directly online through Optavia's website or over the phone through an Optavia representative ("Optavia coach").  Optavia customers who are enrolled in the Premier Program are charged for monthly recurring shipments, but do not pay extra to join the program.  Plaintiffs claim they were auto-enrolled in the Premier Program without their knowledge or consent.  (ECF No. 10 at 16-17.)

On April 1, 2022, Plaintiffs filed a Complaint against Defendants Optavia LLC and Medifast, Inc. ("Defendants") in a putative class action.  Plaintiffs allege Defendants violated the California Automatic Renewal Law, Unfair Competition Law, Consumer Legal Remedies Act, and California Weight Loss Contract Law.  Plaintiffs also claim Defendants committed fraud and were unjustly enriched.  On May 16, 2022, Plaintiffs filed an amended complaint against both Defendants ("First Amended Complaint" or "FAC").  On July 1, 2022, Defendant Medifast, Inc. filed a Motion to Dismiss Plaintiff's Complaint, and subsequently filed an Amended Motion to Dismiss on July 11, 2022.  On July 1, 2022, Defendant Optavia filed a Motion to Dismiss Plaintiff's Complaint and Request for Judicial Notice.  Plaintiffs oppose Defendants' motions.  The case was initially assigned to Judge Moskowitz and later transferred to the undersigned judge.

Plaintiffs bring six putative class action claims against Defendants.  First, Plaintiffs claim that Defendants charged consumers for automatically renewing weight loss products without obtaining explicit consent for the ongoing shipments and in violation of pre-purchase and post-purchase disclosure requirements under the California Automatic Renewal Law, which is part of California's False Advertising Law.  (ECF No. 1 at 2.)  Second and third, Plaintiffs claim that Defendants' practices constitute "unfair

2

competition" and "unlawful, unfair, and deceptive conduct" in violation of the Unfair Competition Law and an "unfair or deceptive act[] or practice[] undertaken . . . in a transaction intended to result or which results in the sale or lease of goods or services to any consumer" under the Consumer Legal Remedies Act (ECF No. 1 at 22-24.)  Fourth, Plaintiffs argue their subscriptions with Optavia constitute a "weight loss contract," which did not contain required pre- and post-purchase disclosures and were unlawful, willful, or fraudulent under California's Weight Loss Contract Law.  (ECF No. 1 at 25-26.)  Fifth, Plaintiffs claim Defendants knowingly and intentionally committed fraud by making "misleading statements and/or omissions in the marketing and billing of its monthly subscriptions" and made these statements "maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being." (ECF No. 1 at 27-28.)  Sixth, Plaintiffs claim Defendants received "a direct and unjust benefit" at Plaintiffs' expense and as a result of Defendants' wrongful conduct.  (ECF No. 28.)

Plaintiffs request various forms of relief including but not limited to certification of their claims as a putative class action, injunctive relief, equitable relief, compensatory damages, punitive damages, pre- and post-judgment interest, costs, reasonable attorneys' fees, and expenses. (ECF No. 29.)  In response, Defendant Optavia filed the present motion to dismiss.  Defendant argues that Plaintiffs lack standing to maintain their claims under Rule 12(b)(1) because the Premier Program did not operate as an auto-ship program for Plaintiff Zeller and because Plaintiff Alpert never participated in the Premier Program. Plaintiffs object that Defendants' arguments improperly rely on information outside the scope of the facts pleaded in the FAC.  Defendant also argues Plaintiffs lack Rule 12(b)(1) standing because neither Plaintiff directly placed orders using the Optavia website, and therefore, cannot establish causation for their purported injuries. Additionally, Defendant argues Plaintiffs lack standing to sue for equitable damages because there is an adequate remedy at law and Plaintiffs have failed to plead otherwise.

Defendant argues Plaintiffs also failed to state any claim upon which relief can be granted, and consequently do not satisfy Rule 12(b)(6).  Defendant claims that California's

3

Automatic Renewal Law, Consumer Legal Remedies Act, and Weight Loss Contract Law do not apply and that Plaintiffs lack standing under the False Advertising Law, Unfair Competition Law, and Consumer Legal Remedies Act. Defendant claims Plaintiffs also lack standing to sue for equitable damages because they have an adequate remedy at law and have failed to plead otherwise. Finally, Defendant argues that Plaintiffs failed to meet the heightened pleading standard of Rule 9(b) for their claims sounding in fraud. The Court will address the parties' arguments in turn.

## II.

## DISCUSSION

The first category of Defendant's challenges relates to Plaintiffs' standing. Defendant questions both Plaintiffs' Article III standing and statutory standing under the FAL, UCL, and CLRA. Before turning to these arguments, the Court addresses Defendants' request for judicial notice.

### A. Request for Judicial Notice

Defendant requests judicial notice of four exemplar emails that purportedly illustrate the information that would have been sent to Plaintiffs with respect to their orders or anticipated auto-shipments. (ECF No. 18, Exhs. 1-4.) Defendant submits exemplars because it no longer possesses the actual emails sent to Plaintiffs, on account of an outside vendor's 90-day retention policy. (ECF No. 18-9 at 5.) Defendant does not request judicial notice of Harsh Tewari's Declaration ("Tewari Declaration") or invoices for orders shipped to Plaintiffs (Exhibits 5-6).

On a motion to dismiss under Rule 12(b)(6), a court's review is generally limited to facts alleged on the face of the complaint and to exhibits attached to the complaint. *Price v. Synapse Grp., Inc.*, No. 16-CV-01524-BAS-BLM, 2017 WL 3131700, at *3 (S.D. Cal. July 24, 2017) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)). Under the "incorporation by reference" doctrine, however, a court may take into account documents that are not attached to the complaint, and whose authenticity no party questions, so long as the complaint refers extensively to the documents, or the documents

are "central" to the complaint. *Id* (citing *Ecological Rights Foundation v. Pacific Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013)). "Whether a document is 'central' to a complaint turns on whether the complaint 'necessarily relies' on that document." *Id.*

Defendant argues that Exhibits 1-4 are admissible to support its Rule 12(b)(6) arguments under the doctrine of incorporation-by-reference. Defendant claims that Plaintiff "referr[ed] extensively" to Plaintiff Zeller's partial acknowledgement email. (ECF No. 28-1 at 4.) Defendant argues that the acknowledgement email, attached as Exhibit 1, shows that "by failing to attach the full email received by Zeller (which she now has), and failing to attach the acknowledgment email received by Alpert *at all*, Plaintiffs were able to shield Alpert's material misrepresentation that she was enrolled in OPTAVIA Premier . . . on her first order." (ECF No. 28-1 at 6.) In the same vein, Defendant argues that the exemplar reminder emails and order update email it has attached as Exhibits 2, 3, and 4, also show that "Plaintiffs purposefully omitted their receipt of these communications from Optavia because to do so would again put the lie to their claims that they were injured by Optavia's alleged ARL violations." (ECF No. 28-1 at 7.) Defendant claims that the documents are authenticated by Mr. Tewari in his role as the Executive Vice President of Technology for Defendant, Medifast, Inc. Finally, Defendant requests the Court's judicial notice of Optavia's entire website because the entire case rests on the contents of the website and Plaintiffs refer to the website throughout the FAC. (ECF No. 28-1 at 7.)

In their opposition to Defendant's request for judicial notice, Plaintiffs attached the entire post-order acknowledgement email Defendant sent to Plaintiff Zeller as Exhibit A. Plaintiff argues that review of the entire email does not change its claim that Defendant violated the ARL. (ECF No. 23 at 2.) Furthermore, Plaintiffs claim that there is no reason for the Court to take judicial notice of Defendant's exemplar acknowledgment email given that Plaintiffs have now provided the actual acknowledgement email Plaintiff Zeller received. The Court agrees and **DENIES** Defendant's request to judicially notice Exhibit 1. With respect to the remaining exemplar emails, Exhibits 2, 3, and 4, they are unauthenticated and judicial notice would be improper. It is well-established that judicial

notice under Rule 201 permits a court to notice an adjudicative fact "if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* The facts Plaintiffs attempt to establish through Exhibits 2, 3, and 4, are reasonably in dispute. Additionally, Plaintiffs did not reference either a reminder email or an order update email in the FAC. These exemplar emails are not "central" to the complaint and are not the actual emails that were sent to the Plaintiffs. Consequently, the Court limits its review to the facts alleged on the face of the FAC and **DENIES** Defendant's request to judicially notice Exhibits 2, 3, and 4.

Defendant also requests that the Court take judicial notice of Optavia's website. Defendant would like the Court to "be free to review the entire Optavia website, and especially those sections of the website that disprove Plaintiffs' claims." (ECF No. 18-9 at 3-4.) Defendant suggests the Court "may look at information [on Optavia's website] regarding Optavia's Independent Coaches, or regarding how Optavia's weight loss programs actually work, and how Premier fits in." (ECF No. 28-1 at 8.) While the Court agrees that Plaintiffs reference the website multiple times in the FAC, the claims at issue specifically relate to pre- and post-purchase disclosures. Plaintiffs have provided screenshots of the checkout process, which the Court finds sufficient at this stage of the litigation. Defendant neither demonstrates that the complaint "necessarily relies" on the contents of the website nor specifies which aspects of the website would be helpful to the Court's review. The request constitutes an "attempt to effectively convert" a motion to dismiss into one for summary judgment. *Rutter v. Apple Inc.*, No. 21-CV-04077-HSG, 2022 WL 1443336, at *3 (N.D. Cal. May 6, 2022). Accordingly, the Court **DENIES** Defendant's request for judicial notice of Optavia's website.

### B. Rule 12(b)(1) Standing

Defendant argues that Plaintiffs lack Article III standing because neither Plaintiff viewed nor used the Optavia website to place their Optavia orders. (ECF No. 18-1 at 2.)

Defendant claims this means neither suffered an injury in fact caused by the contents or omissions on Optavia's website.  Alternatively, Defendant argues that Plaintiffs lack standing for reasons specific to each Plaintiff and the nature of the orders they placed or received.

To satisfy Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  "When 'deciding standing at the pleading stage, and for purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Mecinas v. Hobbs*, 30 F.4th 890, 895–96 (9th Cir. 2022) (citing *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1178 (9th Cir. 2000)).

Rule 12(b)(1) challenges to jurisdiction are either factual or facial.  *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1040 n. 2 (9th Cir.2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000)).  Factual attacks permit the court to look beyond the complaint and facial attacks confine the inquiry to the allegations in the complaint.  *Id.*  In its motion to dismiss, Defendant mounts both factual and facial challenges to Plaintiff's Article III jurisdiction.  Defendant presents two arguments to illustrate that Plaintiffs lack standing: (1) each plaintiff either did not receive an auto-shipment of Optavia products or did not receive an auto-shipment she did not want; and (2) neither plaintiff directly viewed or used the Optavia website to enroll in the Premier Program.  The first category is a factual attack which attempts to demonstrate that Plaintiffs were not injured, and the latter is a facial attack which aims to prove the absence of causation.  The Court addresses each below.

### *1. Rule 12(b)(1) Factual Challenge*

A Rule 12(b)(1) motion to dismiss "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citing *Thornhill Publishing Co. v. General Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). This is the approach Defendant takes here, providing the Tewari declaration and Exhibits 1-6 to suggest that Plaintiffs do not have standing. When a party has brought a factual challenge to the opposing party's Article III standing, the party opposing the motion is responsible for presenting "any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). The Court may look to extra-pleading material in deciding the issue and does not abuse its discretion in doing so, "even if it becomes necessary to resolve factual disputes." *Id.*

Defendant correctly points out that Plaintiffs have not presented additional evidence to refute its 12(b)(1) factual challenge, but this is not decisive. When a court faces a factual challenge to a complaint's jurisdictional allegations, the extra-pleading material must demonstrate that "the controlling questions of fact are undisputed." *Id.* at 202 (citations omitted). However, "where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill,* 594 F.2d at 733–35; Wright & Miller § 1350, at 558). In ruling on a motion to dismiss which involves factual issues that also go to the merits, as here, courts employ the standard for a motion for summary judgment. *See id*. The moving party shall prevail "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

The facts, as pleaded in the FAC, establish Article III standing. In the case before the Court, the determinative jurisdictional facts are whether Plaintiffs received an auto-

shipment as part of their enrollment in the Premier Program and the manner in which they were enrolled.  Plaintiffs and Defendant dispute the circumstances of the former and the relevance of the latter.  Plaintiffs' primary allegation is that Defendant violated the ARL through deficient pre- and post-purchase disclosures. The Tewari Declaration and Exhibits 1-6 do not on their face render the allegation moot, but instead rely on an interpretation of the submissions in Defendant's favor.  Accordingly, the jurisdictional facts remain in dispute, and as a result, the Court declines to grant dismissal based on the extra-pleading material.

According to the FAC, Plaintiff Alpert purchased Optavia products through an Optavia coach on August 9, 2020.  She alleges she was auto-enrolled in Optavia Premier without her knowledge or consent on this date and at the time of purchase.  (ECF No. 10 at 17.)  Plaintiff Alpert also claims she was automatically charged $364.65 on or around September 16, 2020, and shortly thereafter, received a new order she did not want.  (*Id.*)  Defendant claims that internal invoices for Plaintiff Alpert's two orders evidence that Plaintiff was not enrolled in the Premier Program until her second order was placed.  Accordingly, Defendant argues that Plaintiff Alpert lacks Article III standing because she never received an auto-shipped order.  (ECF No. 18-1 at 13.)

According to the facts in the FAC, Plaintiff Zeller purchased Optavia products through an Optavia coach on or around July 3, 2021.  She alleges she was auto-enrolled in Optavia Premier without her knowledge or consent on this date and at the time of purchase.  (ECF No. 10 at 16.)  Plaintiff Zeller also claims that after this initial purchase, she was automatically charged for additional orders on the following dates in 2021: August 5, September 2, October 1, and October 29.  (*Id.*)  Plaintiff Zeller alleges she was enrolled in the Premier Program without her knowledge.  Defendant claims Plaintiff Zeller did not functionally utilize the Premier Program as an auto-ship subscription because, according to internal invoices in Defendant's possession, she customized each order to her own preferences.  (ECF No. 18-1 at 12-13.)  Defendant argues that this means Plaintiff Zeller never paid for and received product she did not want.  (*Id.*)

Plaintiffs must have suffered an injury in fact fairly traceable to the challenged conduct they allege Defendant committed.  *See Spokeo*, 578 U.S. 330, 338.  Here, through extra-pleading material, Defendant attempts to disprove that Plaintiffs were inappropriately enrolled in the Premier Program and received auto-shipped orders.  These facts are disputed, and depending on how these facts are resolved, they have the potential to either establish or eliminate jurisdiction.  The Court therefore declines to grant Defendants' motion at this stage of the proceedings based on Defendant's factual challenge.

### 2.  *Rule 12(b)(1) Facial Challenge*

Defendant also mounts a facial challenge to jurisdiction based on the allegations in the FAC.  The FAC describes two ways in which consumers can purchase Optavia products: (1) directly from the Optavia website; or (2) through an Optavia coach who takes the consumer's payment information and places an order for the consumer.  (ECF No. 20 at 6.)  Plaintiffs indicate that even if a consumer makes a purchase using the second method, the Optavia coach places the customer's order using the website.  (ECF No. 20 at 16, 17; ECF No. 24 at 9.)  Plaintiffs describe at length the ways in which Optavia's website does not comply with the ARL.  They also allege that "disclosures are even more deficient" when customers are enrolled in the Premier Program through Optavia coaches.  (ECF No. 20 at 6-8.)  Specifically, they claim Optavia's "coach training materials systematically (and intentionally) fail to train coaches to comply with the Automatic Renewal Law."  (ECF No. 20 at 8.)

Plaintiffs concede that they were enrolled in the Premier Program through Optavia coaches, or in other words, that they did not use the website to place orders or enroll in auto-shipments.  Defendant argues that this fact defeats standing.  According to Defendant, neither Plaintiff "viewed, used, or relied upon" the Optavia website, and therefore, neither Plaintiff has shown causation for an injury traceable to the alleged unlawful conduct.  (ECF No. 18-1 at 13, 20.)  In response, Plaintiffs argue that they satisfy causation in two ways. First, Plaintiffs argue that both purchase methods violate the ARL because Defendant failed to satisfy the ARL's requirement of post-enrollment disclosures.  (ECF No. 24 at 8.)

10

Second, Plaintiffs allege that Optavia coaches "systematically" fail to provide required disclosures to consumers about being auto-enrolled due to intentionally flawed training materials.  (*Id.*)  With respect to injury, Plaintiffs claim they were both enrolled in the Premier Program without their knowledge or consent, and as a result, both paid money to Defendant they otherwise would not have paid.  (ECF No. 24 at 9.)

The Court construes the allegations in the FAC in favor of the complaining party.  The parties spar over the role and responsibility of Optavia coaches in committing the alleged unlawful acts described in the FAC, and whether secondary liability attaches to Optavia.  The Court will return to these arguments, but for the purposes of Rule 12(b)(1) standing, the FAC contains sufficient factual allegations to establish Article III standing.  Plaintiffs claim injury—that they were auto-enrolled in a program without their knowledge or consent, and as a result, paid money they otherwise would not have.  Plaintiffs also plead causation—that Optavia's coaches who are intentionally trained not to provide proper disclosures, enrolled them in the Premier Program through Optavia's website.  Accepting the allegations in the FAC as true, the Court rejects Defendant's Rule 12(b)(1) facial challenge.

### 3. Injury in Fact

Defendant also argues that Plaintiffs' mere claim of economic injury is insufficient to confer standing.  The parties conflate the requirements of Article III and statutory standing.  The Court will address the latter as part of its discussion of Defendant's Rule 12(b)(6) claims.  To establish Article III standing, a plaintiff "must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Spokeo*, 578 U.S. 330, 339, (citing *Lujan*, 504 U.S. 555, 560).  A "bare procedural violation, divorced from concrete harm" does not satisfy Article III's injury-in-fact requirement.  *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676 (9th Cir. 2018) (citing *Spokeo*, 578 U.S. 330, 341).  A "concrete economic injury" that is "both particularized and actual in nature" is sufficient to satisfy Article III's standing requirements.  *Id.*

Defendant contends that Plaintiffs allege a mere procedural violation of the ARL and did not suffer actual harm.  (ECF No. 28 at 3.)  Defendant argues that the ARL is not a strict liability statute, and therefore, merely alleging a violation is insufficient to confer standing.  More specifically, Defendant states that ARL § 17603, the "unconditional gift" provision, does not create a *per se* actionable injury.  Defendant also relies on its internal records to contest that Plaintiffs paid for something they did not want.

In opposition, Plaintiffs claim that if a company violates the ARL, all shipments it makes to consumers are deemed "unconditional gifts" because consumers have already experienced the harm of being "tricked into signing up and paying for an initial order." (ECF No. 24 at 1.)  Plaintiffs claim they possess both Article III and statutory standing under the UCL, FAL and CLRA because "Optavia's violations caused [Plaintiffs] to spend money they would not have otherwise spent."  (ECF No. 24 at 2.)  Plaintiffs contend that, had they known that Defendant was "automatically enrolling" them in a subscription program with monthly recurring charges, they would not have made any purchases in the first place, let alone recurring purchases.  (ECF No. 24 at 2.)

The Court looks to whether the injuries Plaintiffs claim are "concrete and particularized."   Monetary harm "in the form of unlawfully retained subscriptions payments" satisfies Article III standing.  *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676 (9th Cir. 2018).  For standing purposes, "a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 137 S. Ct. 973, 983, 197 L. Ed. 2d 398 (2017).  Plaintiffs have alleged a harm which is concrete: loss of money they otherwise would not have paid.  They allege they lost money as a result of Defendants' unlawful conduct, or in other words, Defendants' failure to provide the disclosures the ARL requires.  Accepting the allegations in the FAC as true, Plaintiffs have satisfied Article III standing.

### C. Standing to Seek Equitable Remedies

Defendant argues that Plaintiffs lack standing to sue for restitution, an equitable remedy, because Plaintiffs have an adequate remedy at law and failed to plead otherwise.

(ECF No. 18-1 at 14.)  The Court agrees.  The parties argue over the application of a recent case, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), which was further clarified by a subsequent Ninth Circuit decision in *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1310 (9th Cir. 2022).  The Court rejects Plaintiffs' attempt to distinguish *Sonner* in light of *Guzman*.  In *Sonner*, the Ninth Circuit affirmed the district court's dismissal of the plaintiff's claims for restitution because an adequate remedy at law, i.e., damages, was available.  *See* 971 F.3d 834.  The plaintiff in *Sonner* had engaged in gamesmanship to avoid a jury trial by voluntarily dismissing her CLRA damages claim in lieu of seeking restitution on the eve of trial.  Plaintiffs here request equitable restitution at the pleadings stage.

However, nothing in *Sonner*'s reasoning suggests that its holding is limited to motions to dismiss on the eve of a jury trial.  To the contrary, courts in this district have held that, under *Sonner*, a plaintiff must plead inadequate legal remedies in the operative pleading to properly allege claims for equitable relief under the UCL and CLRA.  *See Rivera v. Jeld-Wen, Inc.*, No. 21-CV-01816-AJB-AHG, 2022 WL 3702934, at *12 (S.D. Cal. Feb. 4, 2022); *see also Shay v. Apple Inc.*, No. 20CV1629-GPC(BLM), 2021 WL 1733385, at *4 (S.D. Cal. May 3, 2021); *see also Zaback v. Kellogg Sales Co.*, No. 320CV00268BENMSB, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020); *see also Klaehn v. Cali Bamboo, LLC*, No. 19-CV-1498 TWR (KSC), 2021 WL 3044166, at *15 (S.D. Cal. June 14, 2021), *aff'd*, No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022).  *Guzman* only strengthens the proposition that a plaintiff cannot pursue an equitable claim in federal court when he or she has an adequate remedy at law.  In *Guzman*, the Ninth Circuit clarified that *Sonner*'s holding "applies to equitable UCL claims when there is a viable CLRA damages claim, regardless of whether the plaintiff has tried to avoid the bar to equitable jurisdiction through gamesmanship."  *Guzman*, 49 F.4th at 1313.

A federal court "must apply traditional equitable principles before awarding restitution under the UCL and CLRA."  *Sonner*, 971 F.3d at 841; *see also Guzman*, 49 F.4th at 1311; *see also Klaehn v. Cali Bamboo LLC*, No. 21-55738, 2022 WL 1830685, at

13

*3 (9th Cir. June 3, 2022).  Plaintiffs request money damages by way of a refund under the CLRA and California Weight Loss Contract.  (ECF No. 10, ¶¶ 92, 103.)  Plaintiffs have not pled that they lack an adequate remedy at law in the FAC.  In addition, Plaintiffs' request for "restitution" under the FAL and UCL is a request for a refund, or actual money damages.  (ECF No. 10, ¶¶ 66, 68, 80.)  Furthermore, Plaintiffs' arguments that equitable claims provide greater remedy and are easier to prove does not make their equitable claims proper.

Therefore, the Court dismisses Plaintiffs' claims which sound in equity. Specifically, the Court dismisses Plaintiffs' claims pursuant to the FAL and UCL, and for "Unjust Enrichment/Quasi-contract"[1] (Counts 1, 2, and 6).  On the same basis, the Court dismisses Plaintiffs' requests for injunctive relief and equitable restitution under the CLRA and under a theory of fraud (Counts 3, 4, and 5).  Plaintiffs, conceding that the FAC fails to plead likelihood of future harm, request leave to amend.  (ECF No. 24, 11, n. 4.)  The Court grants leave to amend on all claims above.

### D. Rule 12(b)(6) Failure to State A Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in a complaint.  *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011).  To survive a motion to dismiss, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint may be dismissed under Rule 12(b)(6) "only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories."  *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d

---

[1] Defendant argues that California law does not recognize an independent cause of action for unjust enrichment, and therefore, Plaintiffs' unjust enrichment claim must be dismissed. (ECF No. 18-1 at 22.)  Plaintiffs argue that they pleaded their unjust enrichment claim in the alternative to a contract claim, and are thus allowed to plead the former as a "quasi-contract claim."  (ECF No. 24 at 24.)   Considering the Court's dismissal of this count in its entirety, the Court declines to address the parties' arguments regarding the appropriateness of a claim for unjust enrichment.

14

1156, 1159 (9th Cir. 2016). In reviewing a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of all factual allegations in the FAC and construes them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). Having dismissed Plaintiff's FAL, UCL and unjust enrichment/quasi-contract claims for failure to plead an inadequate remedy at law, only Plaintiffs' claims pursuant to the CLRA and California Weight Loss Contract Law ("WLCL") remain. Before addressing the sufficiency of these claims, the Court addresses Defendant's arguments that the ARL, CLRA and WLCL do not apply.

### 1. Application of ARL

Defendant argues the Premier Program is not a "subscription," therefore the ARL does not apply. (ECF No. 18-1 at 16.) In the FAC, Plaintiffs allege that the Premier Program is an "automatically renewing subscription" which constitutes an "automatic renewal and/or continuous service plan or arrangement under Cal. Bus. & Prof. Code § 17601. (ECF No. 10 at 5-6.) Plaintiffs argue that neither "subscription" nor "purchasing agreement" has a special statutory definition, and therefore, the plain meaning controls. (ECF No. 24 at 15.) Plaintiffs are correct that the plain meaning of a term normally controls, but if there is more than one reasonable interpretation, "courts may consider other aids, such as the statute's purpose, legislative history, and public policy." *Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132, 1138 (S.D. Cal. 2021) (citing *Coal. of Concerned Cmtys., Inc. v. City of L.A.*, 34 Cal. 4th 733, 737, 21 Cal.Rptr.3d 676, 101 P.3d 563 (2004)).

Defendant relies on *Turnier*, 517 F. Supp. 3d at1138, to suggest that the ARL requires a prepayment component for the statute to apply. (ECF No. 18-1 at 16-17.) The Premier Program contains no such component, and the "only charge is for the actual products purchased, which are then scheduled to be shipped at a date *in the future.*" (ECF No. 18-1 at 17.) Plaintiffs contend that the ARL covers "any kind of agreement to purchase something" as long as there is an "automatic, recurring charge to a consumer's payment method." (ECF No. 24 at 15.)

The Court recognizes that Plaintiffs generally refer to the Premier Program as a "subscription" in the FAC, but use of the term "subscription" instead of "purchasing agreement" is not dispositive.   Defendant suggests that a prepayment component is required for an arrangement to be a "subscription."   However, in *Turnier*, the Court recognized that the plain meaning of "subscription" includes not only the "prepayment of publications for a fixed period," but also "an arrangement for providing, receiving, or making use of something of a continuing or periodic nature on a prepayment plan."   517 F. Supp. 3d 1132, 1138 (citing Merriam-Webster dictionaries).   While the arrangement at issue in *Turnier* involved a prepayment for a right to a discount and free shipping on purchases for a year, *Turnier* in no way defined that a subscription must necessarily include a prepayment.   *Id.* at 1139.

Here, there is an alleged arrangement in which a consumer's credit card is charged at the end of a definite term in exchange for shipment of products.   *See* Cal. Bus. & Prof. Code § 17601.   The California Legislature clearly stated the purpose of the statute at issue: "It is the intent of the Legislature to end the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."   Cal. Bus. & Prof. Code § 17600.   Considering the ARL's statutory purpose, the Court finds the ARL applies to the Premier Program.   The Premier Program is both a purchasing agreement and a subscription subject to automatic renewal.

### 2.  Application of CLRA

Defendant also argues that the CLRA is not applicable to the Premier Program. (ECF No. 18-1 at 16-17.)   The CLRA prohibits businesses from engaging in certain unlawful acts or practices and applies to transactions for "goods" or "services."   *See Turnier v. Bed Bath & Beyond Inc.*, No. 3:20-CV-00288-L-MSB, 2021 WL 4209473, at *1 (S.D. Cal. Sept. 16, 2021) ("*Turnier II*"); *see also* Cal. Civ. Code § 1770.   "Goods" means tangible chattels bought or leased for personal, family, or household purposes, including certificates or coupons exchangeable for those chattels. Cal. Civ. Code § 1761.

16

"Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods. *Id.* There must be an exchange of membership for "tangible items" for the CLRA to apply. *Turnier II*, 2021 WL 4209473, at *2. Though shipping might be considered a service if provided under a membership, free standard shipping does not on its own automatically constitute a service. *See id.* at *2. In *Turnier II*, the exchange in question concerned $29 for a 20% discount and free shipping on purchases for a year. *See id.* at *1. The subscription in *Turnier II* renewed automatically annually, but did not involve recurring payments for recurring shipments of goods, which is the injury that Plaintiffs allege here.

Plaintiffs allege that the "goods" in question under the CLRA are "Optavia food products." (ECF No. 10 at 24.) Plaintiffs further allege that the "services" in question are "Defendants' weight-loss coaching program." (*Id.*) Plaintiffs also allege that the "transactions" in question are the Plaintiffs' and class members' purchases. (*Id.*) Accepting the allegations in the FAC as true, which the Court must at this stage, there was a transaction that resulted in the sale of tangible goods (diet products) and services (diet coaching) to the consumer. Plaintiffs claim that their purchase of these products and services resulted in injury, i.e., unlawful enrollment in a recurring shipment program without their knowledge or consent. Plaintiffs have therefore alleged a claim under the CLRA.

### 3. Statutory Standing under the CLRA

Having determined that the CLRA applies, the Court turns to statutory standing. There is no private right of action under the ARL. Under the ARL, a consumer "who has been harmed by a violation of the [ARL] may bring a claim pursuant to other consumer protection statutes, including California's FAL, [UCL] and [CLRA]." *Arnold v. Hearst Mag. Media, Inc.*, No. 19-CV-1969-WQH-MDD, 2020 WL 3469367, at *7 (S.D. Cal. June 25, 2020) (citing *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676-77 (9th Cir. 2018)); *see also* Cal. Bus. & Prof. Code § 17535. Consequently, Plaintiffs must establish standing under California's consumer protection statutes. Defendant argues that Plaintiffs lack

standing to bring claims under the FAL, UCL, and CLRA because Plaintiffs did not sufficiently allege economic injury or causation. (ECF No. 28 at 2.) Defendant also argues that Plaintiffs improperly rely on a theory of vicarious liability. (ECF No. 28 at 7.)

Having dismissed Plaintiff's FAL and UCL claims for failure to plead an inadequate remedy at law, the Court addresses Plaintiffs' standing to bring their CLRA claim. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices' undertaken in the course of consumer transactions." *Price*, 2017 WL 3131700, at *4 (citations omitted). To establish standing under the CLRA a plaintiff must: (1) plead an economic injury, (2) show that the injury was caused by the challenged conduct, and (3) have suffered damages as a result of the violation. *See id; see also Herrera v. Estee Lauder Cos., Inc.*, No. SACV 12-01169-CJC(ANx), 2012 WL 12507876, at *2 (S.D. Cal. Sept. 20, 2021).

In other words, standing under the CLRA requires a plaintiff to demonstrate injury, reliance, and "any damage" resulting from an unlawful or deceptive business practice. *Price*, 2017 WL 3131700, at *4; Cal. Civ. Code § 1770. The violation must have caused actual harm, and a mere procedural violation is not enough. *See id; see also Rutter*, 2022 WL 1443336, at *4 (citing *Spokeo*, 578 U.S. 330, 342). To satisfy reliance, a consumer must allege they "would not have purchased the product, or paid as much for the product, absent the defendant's misrepresentations or omissions." *Price*, 2017 WL 3131700, at *4 (citing *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)).

Defendant argues that Plaintiffs cannot establish causation because the alleged conduct did not cause Plaintiffs "to part with money." (ECF No. 18-1 at 18.) Defendant contends Plaintiffs cannot point to a representation or omission in violation of the ARL that led to their purported injury because neither Plaintiff directly utilized the Optavia website to place their orders. (ECF No. 18-1 at 20.) Having dismissed Plaintiffs' UCL claim, the Court declines to discuss at length the ARL's unconditional gifts provision as it relates to UCL standing. In short, the ARL's unconditional gift provision does not independently confer standing for an unfair competition claim under Section 17200, as "the

18

consumer's injury must be . . . caused by the defendant's failure to provide the required disclosures." *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 576, 269 Cal. Rptr. 3d 86, 92 (2020), *reh'g denied* (Oct. 2, 2020), *review denied* (Dec. 9, 2020).  The same applies for CLRA standing.  "To establish reliance under the FAL, UCL, and CLRA, a plaintiff must show that the misrepresentation or omission was 'an immediate cause of the injury-producing conduct.'" *Price*, 2017 WL 3131700, at *5 (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *Kwikset*, 246 P.3d at 887–88).  "A plaintiff can satisfy this requirement by alleging she would not have purchased the product, or paid as much for the product, absent the misrepresentation or omission." *Id.* (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104-05 (9th Cir. 2013)).

The FAC contains allegations that Plaintiffs were enrolled by Optavia coaches in the Premier Program without their knowledge or consent.  (ECF No. 10 at 16, 17.)  Plaintiffs allege that the acknowledgement email they received was defective and that, had they known they were being enrolled in the Premier Program, they would not have purchased any products from Optavia or enrolled in recurring purchases.  (*Id.* at 17.)  These allegations emphasize the role of Defendants' purported misconduct in causing Plaintiffs' injury and sufficiently allege reliance. *See Price*, 2017 WL 3131700, at *5 (citing *Reid*, 780 F.3d 952, 958).

Plaintiffs also sufficiently allege injury.  They allege that Defendant's ARL violations resulted in charges amounting to $1,610.56 for Plaintiff Zeller and $815.82 for Plaintiff Alpert to their credit cards, respectively.  (ECF No. 10 at 16, 17.)  Defendant references internal invoices to make arguments that Plaintiff Zeller's purchase patterns indicate she did not receive product she did not want.  The Court declines to review internal invoices accessible only to Defendant at this stage and therefore rejects this argument.  According to the FAC, Plaintiffs suffered a loss of money or property sufficient to satisfy the "any damage" requirement of the CLRA.  In sum, Plaintiffs have established standing to bring their CLRA claims.

### 4. Application of WLCL

Defendant argues that California's Weight Loss Contract Law does not apply to Plaintiffs' enrollment in a free shipping program. (ECF No. 18-1 at 21.) The WLCL defines "weight loss contract" as "a contract with any weight loss program or center" that offers any of the following:

> (1) Instruction, counseling, supervision, or assistance in weight reduction, body shaping, diet, and eating habits, by persons who are not licensed health care professionals.

> (2) Use of facilities of a weight loss center for any of the purposes specified in paragraph (1).

> (3) Membership in any group, club, association, or organization formed for any of the purposes specified in paragraph (1).

> (4) Prepackaged, or premeasured "diet foods" provided by the weight loss program or center.

Cal. Civ. Code § 1694.5. While courts have not discussed the scope of "weight loss contract" or "weight loss program" at length, the statute plainly refers to contracts with any weight loss program or center that helps participants lose weight.

Defendant itself describes the Premier Program as a "weight loss and healthy living program." (ECF No. 18-1 at 1.) Defendant admits that "the entire purpose" of the Premier Program is to ensure that customers have a coach and receive uninterrupted monthly meal plans, "to reach their desired health and fitness goals." (ECF No. 18-1 at 1.) According to Defendant, the Premier Program offers participants membership, instruction from Optavia coaches, and monthly meal plans to achieve their diet and fitness goals.

Defendant points out that Plaintiffs never saw the website they claim formed the "weight loss contract" between Plaintiffs and Optavia. (ECF No. 18-1 at 22.) Defendant argues Plaintiffs fail to state a claim because enrollment in the Premier Program does not constitute entering into a weight loss contract. (*Id*.) However, regardless of the way in which Plaintiffs enrolled in the Premier Program, the alleged facts make clear that Plaintiffs entered into an agreement and received weight loss products from Defendant. Defendant

20

does not contest that an exchange of this nature took place.  Considering Defendant's own characterization of Optavia's offerings and the allegations in the FAC, the Court finds that the WLCL is applicable to the Premier Program.

### 5.  Sufficiency of Plaintiffs' ARL Agency Allegations

Defendant additionally claims that Plaintiffs' CLRA and WLCL claims must fail because they did not personally view Optavia's website, and thus cannot prove causation. (ECF No. 18-1 at 18-20.)  This argument relies on the assumption that vicarious and principal-agent liability does not apply, or more specifically, that Plaintiffs' enrollment through Optavia coaches cuts off any causation.  Based on the arguments raised presently, the Court is not convinced.

Plaintiffs argue that a company is responsible for the acts of its agents and claim they alleged facts in the FAC that "show plausible agency liability."  (ECF No. 24 at 9; ECF No. 33 at 1.)  Defendant points out that the Optavia coaches on whom Plaintiffs purportedly relied are not named defendants in this case. (ECF No. 18-1 at 12.) Defendant argues that Plaintiffs rely solely on vicarious liability cases to support their secondary liability argument and raise a "pure agency theory" for the first time in their sur-reply. (ECF No. 33 at 2.)

The cases Plaintiffs cite in support of their argument that Optavia should be responsible for the acts of Optavia coaches deal with the Telephone Consumer Protection Act, which specifically provides for vicarious liability.  (ECF No. 24 at 9; ECF No. 28 at 7.) Defendant is correct that the statutes in question do not explicitly provide for vicarious liability.  However, Plaintiffs allege that coaches "are systematically trained by Defendants [Optavia and Medifast] to tell customers that the coaches can purchase on their behalf, to take customers' payment information, and to enroll customers" and "systematically fail" to disclose to consumers "that they are being auto-enrolled" because "Optavia's coach training materials systematically (and intentionally) fail to train coaches to comply with the Automatic Renewal Law."  (ECF No. 10 at 8.)  These allegations sufficiently state a principal-agent relationship between Optavia and its coaches.   Furthermore, having

dismissed Plaintiff's FAL and UCL claims, the relevant inquiry regarding the applicability of principal-agent liability falls under the CLRA, WLCL, and common law fraud. Neither party makes arguments in the context of these statutes.[2]  Therefore, the Court declines to grant Defendant's motion to dismiss for failure to state a claim on this basis.

Finally, Defendant's remaining Rule 12(b)(6) argument relies on the Tewari Declaration and Exhibits 5 and 6, which the Court declines to consider as it assumes the truth of all factual allegations in the FAC and construes them in the light most favorable to the non-moving party.  *Cahill*, 80 F.3d 336, 338.  The Court declines to construe that Plaintiffs knew about their enrollment in an autoship program based on purported ordering patterns established by extra-pleading material accessible only to one party, especially when the FAC contains clear allegations that they were unaware of such enrollment. Accordingly, the Court **DENIES** Plaintiff's request to dismiss Plaintiffs' remaining CLRA and WLCL claims for failure to state a claim under Rule 12(b)(6).

### E. Rule 9(b) Heightened Pleading Standard

Federal Rule of Civil Procedure Rule 9(b) requires a complaint in an action based on fraud to allege all the substantive elements of fraud.  "The elements of a cause of action for fraud in California are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce

---

[2] The parties primarily spar about the relevance of *People v. JTH Tax, Inc*, 212 Cal App. 4th 1219 (2013), a case which discusses principal-agent liability as applied to UCL suits. Plaintiffs claim *JTH* stands for the California Supreme Court's holding that the FAL allows for principal-agent liability.  Defendant argues that *JTH* and the other cases to which Plaintiffs cite apply specifically to the franchisor-franchisee context.  Defendant is not incorrect, but Plaintiffs also provide federal cases which have interpreted *JTH* as supporting the proposition that normal agency theory applies to UCL suits.  *See Zeff v. Greystar Real Est. Partners, LLC*, No. 20-CV-07122-EMC, 2021 WL 632614, at *8 (N.D. Cal. Feb. 18, 2021); *see also Monaco v. Bear Stearns Companies, Inc.*, No. CV0905438SJOJCX, 2013 WL 12114830, at *7 (C.D. Cal. Apr. 25, 2013).  The Ninth Circuit has not directly ruled on the issue, but appears to accept this interpretation.  *See Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1188 (9th Cir. 2016).

reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 974 (1997)). Plaintiffs do not contest that Rule 9(b) applies to their consumer protection and common law fraud claims, and the Court agrees that their claims sound in fraud. Consequently, Plaintiffs' remaining CLRA and common law fraud claims must satisfy these elements.

Plaintiffs argue that the allegations in the FAC contain sufficient particularity to satisfy Rule 9(b). (ECF No. 24 at 19.) Rule 9(b)'s heightened pleading standard requires that allegations which sound in fraud are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Rutter*, 2022 WL 1443336, at *2 (citing *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)). In other words, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct" and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *Id.* (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) and *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 252 F.3d 423, 429 & n.6 (9th Cir. 2001)).

Plaintiffs provide a chart outlining the particulars of their claim to illustrate that they have met this standard. (ECF No. 24 at 19-22.) The Court is not convinced. Defendant again distinguishes between Optavia and the Optavia coaches with whom Plaintiffs spoke. Defendant contends that the FAC does not allege fraudulent activity by the Optavia coaches, but even if the FAC had properly done so, the coaches, not Optavia generally, made the purportedly fraudulent misrepresentations and/or omissions to Plaintiffs and caused the injury. (ECF No. 28 at 12.) The Court does not find it necessary to rule on the matter of agency liability based on these arguments, but agrees that Plaintiffs provide little detail about the nature of the exchange between Plaintiffs and the Optavia coaches with whom they placed orders and the manner in which they were misled.

Plaintiffs allege that Optavia "systematically" and "intentionally" fails to train its coaches to comply with the ARL, which involves "misleading" and "deficient" post-purchase confirmations.  (ECF No. 10, FAC ¶¶ 29.)  Plaintiffs also allege that Optavia "deceptively" enrolled Plaintiffs in Optavia Premier and "deceptively" failed to disclose that they were being enrolled in an autorenewal program.  However, the FAC paragraphs to which they cite in their opposition as illustrating the "What" and "How" of their fraud claims, describe generally the ways pre- and post-purchase disclosures were deficient, but do not provide adequate details about the deception they allege.[3]  (ECF No. 10, FAC ¶¶ 43, 49, 19, 20-37, 29, 31-32.)

For Plaintiffs' claims sounding in fraud, the key question is whether the level of detail in the FAC satisfies Rule 9(b).  The Court finds it does not.  Simply calling conduct "deceptive" only generally or alleging that Optavia's training for its coaches "intentionally" failed to comply with the ARL or was "misleading," without additional specificity, does not satisfy Rule 9(b).  Consequently, Plaintiff's CLRA and common law fraud claims are dismissed, without prejudice and with leave to amend.

## III.

## CONCLUSION

In accordance with the above, Defendant's Motion to Dismiss is **GRANTED IN PART,** and **DENIED IN PART**.  Plaintiffs may file an amended complaint addressing the foregoing deficiencies within 21 days of the filing of this Order.

///

///

///

---

[3] The Court identifies a single phrase in these paragraphs which could be construed as alluding to deception: "Defendants . . . misrepresent and conceal material facts regarding Optavia Premier, and mislead reasonable consumers into thinking they are simply making a one-time purchase."  (ECF No. 10, FAC ¶37.)  However, Plaintiffs do not allege any specific details about the nature of the misrepresentation or concealment that resulted in the alleged deception.

1      **IT IS SO ORDERED.**

2    Dated:  December 22, 2022

3

4                              Hon. Dana M. Sabraw, Chief Judge

5                              United States District Court