UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE ZELLER, and ANGELICA ALPERT, | Case No.:  22-cv-434-DMS-MSB |
| Individually, and on Behalf of All Others Similarly Situated, | **ORDER GRANTING DEFENDANT MEDIFAST, INC.'S AMENDED MOTION TO DISMISS** |
| Plaintiffs, | |
| v. | |
| OPTAVIA, LLC and MEDIFAST, INC., | |
| Defendants. | |

This case comes before the Court on Defendant Medifast, Inc.'s ("Defendant" or "Medifast") motion to dismiss Plaintiffs Jamie Zeller's and Angelica Alpert's ("Plaintiffs") claims for violation of a number of California consumer protection laws and related common law claims.  Defendant moves to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(2) on grounds that Plaintiffs lack personal jurisdiction over Medifast.  The motion is fully briefed and submitted.  For the reasons stated below, the Court **GRANTS** Defendant's motion.

## I.

## BACKGROUND

The Optavia Premier Program ("Optavia Premier" or "Premier Program") is an auto-ship program for Optavia meal plan products.  Participants can enroll in the Premier

Program either directly online through Optavia's website or over the phone through an Optavia representative ("Optavia coach"). Optavia customers who are enrolled in the Premier Program are charged for monthly recurring shipments, but do not pay extra to join the program. Plaintiffs claim they were auto-enrolled in the Premier Program without their knowledge or consent. (ECF No. 10 at 16-17.)

On April 1, 2022, Plaintiffs filed a Complaint against Defendants Optavia LLC and Medifast, Inc. ("Defendants") in a putative class action. Plaintiffs allege Defendants violated the California Automatic Renewal Law, Unfair Competition Law, Consumer Legal Remedies Act, and California Weight Loss Contract Law. Plaintiffs also claim Defendants committed fraud and were unjustly enriched. On May 16, 2022, Plaintiffs filed an amended complaint against both Defendants ("First Amended Complaint" or "FAC"). On July 1, 2022, Defendant Medifast filed a Motion to Dismiss Plaintiff's Complaint, and subsequently filed an Amended Motion to Dismiss on July 11, 2022, based on lack of personal jurisdiction. The case was initially assigned to Judge Moskowitz and later transferred to the undersigned judge.

Plaintiffs bring six putative class action claims against Defendants. First, Plaintiffs claim that Defendants charged consumers for automatically renewing weight loss products without obtaining explicit consent for the ongoing shipments and in violation of pre-purchase and post-purchase disclosure requirements under the California Automatic Renewal Law, which is part of California's False Advertising Law. (ECF No. 1 at 2.) Second and third, Plaintiffs claim that Defendants' practices constitute "unfair competition" and "unlawful, unfair, and deceptive conduct" in violation of the Unfair Competition Law and an "unfair or deceptive act[] or practice[] undertaken . . . in a transaction intended to result or which results in the sale or lease of goods or services to any consumer" under the Consumer Legal Remedies Act (ECF No. 1 at 22-24.) Fourth, Plaintiffs argue their subscriptions with Optavia constitute a "weight loss contract," which did not contain required pre- and post-purchase disclosures and were unlawful, willful, or fraudulent under California's Weight Loss Contract Law. (ECF No. 1 at 25-26.) Fifth,

Plaintiffs claim Defendants knowingly and intentionally committed fraud by making "misleading statements and/or omissions in the marketing and billing of its monthly subscriptions" and made these statements "maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being." (ECF No. 1 at 27-28.)  Sixth, Plaintiffs claim Defendants received "a direct and unjust benefit" at Plaintiffs' expense and as a result of Defendants' wrongful conduct.  (ECF No. 28.)

Plaintiffs request various forms of relief including but not limited to certification of their claims as a putative class action, injunctive relief, equitable relief, and compensatory and punitive damages.  (ECF No. 29.)  In response, Defendant filed the present motion.

## II.

## LEGAL STANDARD

On a motion to dismiss, the plaintiff bears the burden "to establish the district court's personal jurisdiction over the defendant." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). Because "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution[,]" this Court "'need only determine whether personal jurisdiction in this case would meet the requirements of due process.'" *Id.* at 1129 (citations omitted). "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073-74 (9th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 216 (1945)) (quotations omitted).

"In resolving a Rule 12(b)(2) motion, the court may consider evidence outside the pleadings, including affidavits and other materials submitted on the motion." *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1135 (S.D. Cal. 2016) (citing *Daimler AG v. Bauman*, 571 U.S. ——, 134 S.Ct. 746, 752, 187 L.Ed.2d 624 (2014)). A plaintiff cannot "simply rest on the bare allegations of the complaint, but uncontroverted allegations in the complaint must be taken as true." *Id*. at 1136 (citing *Mavrix Photo*, 647 F.3d at 1223 (quotation omitted)). The Ninth Circuit has established a three-prong test for determining whether a party is subject to specific personal jurisdiction:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). For the reasons set forth below, Plaintiffs have failed to establish specific jurisdiction over Medifast.

## III.

## DISCUSSION

Defendant argues that the Court lacks both general and specific personal jurisdiction over Medifast. In this case, Plaintiffs do not challenge, and therefore the Court will not address, Defendant's argument that the Court lacks general jurisdiction over Defendant. The key question is whether the allegations in Plaintiffs' FAC and the evidence submitted by Plaintiffs in opposition to Defendant's motion establish specific personal jurisdiction over Medifast. Defendant argues that Plaintiffs focus solely on the first prong of the Ninth Circuit's test, and even then, a single conclusory allegation in the FAC that Defendant

"purposefully marketed and sold Optavia products to consumers in California, including Plaintiffs" is not sufficient to establish personal jurisdiction.  (ECF No. 27 at 2, ¶ 10.) Defendant further argues that Plaintiffs fail to present any evidence that Medifast had any presence in California or that it took any action in California.

As an initial matter, Defendant argues Plaintiffs inappropriately resort to "group pleading" in their FAC by lumping Defendants Medifast and Optavia together, and alleging in conclusory terms that "the Court has personal jurisdiction over Defendants because Defendants purposefully marketed and sold Optavia products to consumers in California, including Plaintiffs."  (ECF No. 27 at 2, 10.)  Plaintiffs claim their allegation against Medifast is "classic purposeful availment" and reject the notion that the FAC constitutes improper group pleading.  To satisfy Federal Rule of Civil Procedure 8, a complaint must contain enough details to give a defendant fair notice of its alleged role in the case.  *See S.W. by & through Wright v. Lincoln Mil. Prop. 1 Mgmt., Inc.*, No. 21-CV-00493-H-MDD, 2021 WL 1579046, at *3 (S.D. Cal. Apr. 22, 2021).  If fair notice exists, group pleading itself is not fatal to a complaint.  *Id.*  However, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (citing *Alperin v. Vatican Bank,* 410 F.3d 532, 539 n. 1 (9th Cir.2005); *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.,* 788 F.2d 535, 540 (9th Cir.1986)).

Here, the FAC clearly describes Plaintiffs' interactions with Optavia coaches to establish specific personal jurisdiction over Optavia, but the allegations do not make clear Medifast's role, if any, in the transactions at issue.  Plaintiffs do not argue an agency or alter ego approach to jurisdiction over Medifast.  Rather, Plaintiffs argue that "Medifast <u>itself</u> is directly responsible for marketing and selling the accused products to Plaintiffs and other Californians[,]" (ECF No. 22 at 1; ECF No. 10 at ¶ 10), and is therefore subject to jurisdiction in this forum.

1    Plaintiffs carry the burden to demonstrate personal jurisdiction over Defendant.  *See*

2  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citing *Harris Rutsky &*

3  *Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1128–29 (9th Cir.2003)).

4  Plaintiffs have not met that burden.  While the FAC makes clear the ways in which

5  Plaintiffs interacted with Optavia, it is silent with respect to Medifast's involvement.

6  Absent allegations regarding Medifast's conduct with Plaintiffs, Medifast's role in causing

7  the harm Plaintiffs allege is unclear.

8    Under the Ninth's Circuit's three-prong test, Plaintiffs must first show that the

9  defendant "perform[ed] some act by which he purposefully avails himself of the privilege

10  of conducting activities in the forum."  *Schwarzenegger v. Fred Martin Motor Co.*, 374

11  F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

12  Plaintiffs argue their allegation that both Defendants Optavia and Medifast "purposefully

13  marketed and sold Optavia products to consumers in California, including Plaintiffs" is

14  sufficient to establish purposeful availment.  (ECF No. 22 at 2.)  Medifast correctly argues

15  that the allegation is conclusory and lacks factual support.

16    In addition, Defendant argues that Plaintiffs' allegations do not satisfy the second

17  prong of the Ninth Circuit's test, *i.e.,* that their claims arise from Medifast's purported

18  marketing and selling of Optavia products to consumers in California.  The Court agrees.

19  To satisfy purposeful availment, a plaintiff typically must show evidence of the defendant's

20  actions in a forum, such as executing or performing a contract there.  *See Schwarzenegger*,

21  374 F.3d at 802 (stating the second prong requires that the claim "arises out of or relates to

22  the defendant's forum-related activities.").   Plaintiffs neither point to any factual

23  allegations to illustrate Medifast's activity in California nor set forth an agency or alter ego

24  theory to support their jurisdictional conclusion.  Further, the claims at issue principally

25  concern purported violations of consumer protection laws, but Plaintiffs fail to include any

26  facts regarding Medifast's individual role in violating those laws.  Defendant notes that in

27  the 16-page "Facts" section of the FAC, wherein Plaintiffs set out the activities giving rise

28  to their alleged claims, Medifast is not once mentioned.  Thus, the FAC fails to allege facts

giving rise to personal jurisdiction over Medifast as there are no allegations that suggest Plaintiffs' claims "arise out of or relate to" Medifast's contacts in California.

Furthermore, Plaintiffs' extra-pleading materials do not establish specific personal jurisdiction over Medifast.  To support a prima facie showing of jurisdictional facts, Plaintiffs provided a copy of Medifast's 2021 10-K, an excerpt of a Medifast Q4 2021 Investor Presentation, and copies of public LinkedIn profiles for persons who list past or current positions at "Medifast, Inc." (ECF No. 22-4, Ex. 1-3.)[1]  Plaintiffs contend that these extra-pleading materials support their allegation that Medifast is directly responsible for marketing and selling the accused products to Plaintiffs and other Californians.  (ECF No. 22 at 1.)

Plaintiffs point out that Medifast's 10-K opens by stating: "Medifast, Inc. ('Medifast,' the 'Company,' 'we' or 'us') is the global company behind one of the fastest-growing health and wellness communities, OPTAVIA ...."  (ECF No. 22, Ex. 1 at 4.) Plaintiffs also argue that Medifast's 10-K touts "OPTIVIA-branded nutritional products we [Medifast] market[,]" (*id.,* Ex. 1 at 8), and describes "our [Medifast's] OPTAVIA Premier service[,]" which is the accused autorenewal program at issue.  Further, in support of their argument that Medifast is doing business in California, Plaintiffs note that the 10-K references the "California Consumer Privacy Act" among other federal and state laws as potentially having a "significant[] affect [on] our [Medifast's] business." (*Id.,* Ex. 1 at 21). Finally, Plaintiffs argue Medifast's Investor Presentations (Exhibit 3) evidence Defendant's "role in marketing and selling the accused products" through references therein to "subscription[s]," "coaches", "shipping[.]"  (ECF No. 22 at 5.)

Defendant points out that the filing of consolidated Form 10-Ks by parent companies which include their subsidiaries' activities is a "common" and "standard business practice."

---

[1]  Defendant objects to Plaintiffs' Exhibit 3 (LinkedIn profiles) as unauthenticated and inadmissible hearsay.  The objections are sustained and Exhibit 3 is not considered on the present motion.

(ECF No. 27 at 8 (citing cases).)   Defendant argues that such 10-K filings are financial reports that are intended to provide a comprehensive summary of the *financial performance* of a parent and its subsidiary companies.   Accordingly, Defendant argues the 10-K filing at issue is "not intended to, and do[es] not, establish that Medifast—as opposed to one of its subsidiaries—conducted a certain activity."   (ECF No. 27 at 7.)   In support, Defendant cites *J.L.B. Equities, Inc. v. Ocwen Financial Corp.,* 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001) (stating "consolidated financial reporting is typical in a parent-subsidiary relationship," and holding the fact that parent company has consolidated its annual report with its subsidiary was insufficient to confer personal jurisdiction on the parent).   The Court agrees with the reasoning of *J.L.B. Equities.*   The 10-K filing at issue references consolidated activities, but does not establish that Medifast—as opposed to Optavia— transacted in California, let alone with Plaintiffs.   *See also Sonora Diamond Corp. V. Super. Ct.,* 83 Cal. App. 4th 523, 533 (2000) (stating "consolidated reporting is standard business practice and will not support jurisdiction in the absence of evidence establishing an agency relationship.").

The Investor Presentations fare no better.   They too reference business activities of parent and subsidiary, but they do not show that Medifast itself engaged in any particular activity in California.   *See Bauman v. DaimlerChrysler AG,* 2005 WL 3157472, *6 (N.D. Cal. 2005) (holding that a corporate brochure, which included a letter from the chairman of its parent company stating that the brochure highlights "our North American activities," did not establish minimum contacts with California of parent company as the brochure reflected consolidated activities in California).   So it is here.[2]

---

[2] While Medifast states it "has no involvement with any of the actions that form the basis of Plaintiffs' claims[,]" (ECF No. 27 at 6 n. 2), the Court declines to further address the third prong (whether exercising jurisdiction over Medifast would be reasonable) because Plaintiffs have failed to meet their burden on the first two prongs of the test set out in *Schwarzenegger,* 374 F.3d at 802.

## III.

## CONCLUSION

For these reasons, Defendant's Motion to Dismiss is **GRANTED**. Plaintiffs may file an amended complaint addressing the foregoing deficiencies within 21 days of the filing of this Order.

**IT IS SO ORDERED.**

Dated:  December 22, 2022

Hon. Dana M. Sabraw, Chief Judge
United States District Court

9