Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon C. Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Kenneth J. Grunfeld, Esquire
kgrunfeld@golomblegal.com
Kevin W. Fay, Esquire
kfay@golomblegal.com
David A. Rosenfeld, Esquire
drosenfeld@golomblegal.com
GOLOMB SPIRT GRUNFELD, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Phone: (215) 985-9177
Fax:   (215) 985-4169

*Counsel for Plaintiffs and Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE ZELLER, and ANGELICA ALPERT<br><br>Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiffs*,<br>v.<br><br>OPTAVIA LLC and MEDIFAST, INC.<br><br>*Defendants*. | Case No. 3:22-cv-00434-BTM-MSB<br><br>**Second Amended Class Action Complaint**<br><br>**Demand for Jury Trial** |

# **Table of Contents**

I. Introduction. ........................................................................................................... 1

II. Parties. .................................................................................................................... 2

III. Jurisdiction and Venue. ........................................................................................ 2

IV. Facts....................................................................................................................... 3

    A.    California Automatic Renewal Law............................................................ 3

    B.    Defendants charge consumers for automatically-renewing weight loss products, in violation of the Automatic Renewal Law and other consumer protection laws. ....................................................................................... 4

        1.    Defendants use multi-level marketing to sell subscription weight loss products. ................................................................................. 4

        2.    Defendants' online Optavia Premier enrollment process violates the Automatic Renewal Law and misleads reasonable consumers.................... 6

        3.    Defendants' process for enrolling customers in Optavia Premier through coaches violates the Automatic Renewal Law and misleads reasonable consumers............................................................................. 9

        4.    Defendants' post-order acknowledgment violates Automatic Renewal Law and misleads reasonable consumers.................................... 12

        5.    Defendants fail to provide a "cost-effective, timely, and easy-to-use mechanism for cancellation."  Instead, Defendants systematically continue to charge consumers who try to delay, cancel, or return shipments. ....................................................................................... 14

        5.    Defendants know that their automatic renewal scheme is misleading consumers. ....................................................................................... 17

        6.    Defendants misled and harmed Plaintiffs Zeller and Alpert....................... 19

V. Class action allegations. ........................................................................................ 24

VI. Remedies and Inadequate Remedy at Law............................................................ 26

VII. Claims. ................................................................................................................. 29

    Count 1: False Advertising - California Automatic Renewal Law ................................... 29

    Count 2: Unfair Competition Law (UCL)....................................................... 30

    Count 3: Consumers Legal Remedies Act (CLRA) ........................................ 32

    Count 4: California Weight Loss Contract Law.............................................. 34

    Count 5: Fraud ................................................................................................ 37

VIII. Prayer for Relief. ................................................................................................. 38

ii

Case No. 3:22-cv-00434-BTM-MSB

## I.   Introduction.

1.     Defendants run a multi-level marketing business that sells "Optavia" weight loss products and services (like packaged meals) to consumers.  Parent company Medifast has built Optavia into a $1 billion brand.  This growth, however, is fueled by an illegal automatic renewal scheme.

2.     When consumers purchase any Optavia product, Defendants use dark patterns[1] to enroll consumers in an automatic renewal plan called "Optavia Premier." Once enrolled, either directly online or through Optavia "coaches," consumers are automatically shipped products and charged hundreds of dollars each month.  When enrolling customers, Defendants fail to provide the disclosures required by law and fail to obtain sufficient consent.  As a result, Defendants sign consumers up for automatically-renewing charges without their knowledge.  Then, when consumers try to cancel or return products, Defendants give them the runaround and continue to charge their payment methods.

3.     This illegal automatic renewal scheme works.  According to Defendants, the average Optavia client spends thirty times more money on diet products compared to industry benchmarks.  More than 75% of Optavia's customers get auto-enrolled for at least one renewal fee, and nearly 50% of customers get charged four or more times.

4.     This class action seeks to put an end to Defendants' illegal auto-renewal practices and hold Medifast and Optavia accountable for the damages they have caused and continue to cause.

---

[1] Dark patterns are illegal tactics that companies employ to trick users by means of manipulative interface designs that obscure, subvert, or impair autonomy and decision-making around buying choices.  *See* "FTC to Ramp up Enforcement against Illegal Dark Patterns that Trick or Trap Consumers into Subscriptions," Oct. 28, 2021, *available at* https://www.ftc.gov/news-events/press-releases/2021/10/ftc-ramp-enforcement-against-illegal-dark-patterns-trick-or-trap (last visited March 1, 2022).

## II.     Parties.

5.     Plaintiff Jamie Zeller is a citizen of California.  She is domiciled in Escondido, California.  She was a customer of Optavia in August 2021, was enrolled in Optavia Premier without her consent, and was automatically charged for recurring shipments.

6.     Plaintiff Angelica Alpert is a citizen of California.  She is domiciled in Redwood City, California.  She was a customer of Optavia in August 2020, was enrolled in Optavia Premier without her consent, and was automatically charged for recurring shipments.

7.     Defendant Optavia, LLC is a Delaware Limited Liability Company headquartered at 100 International Drive, 18th Floor, Baltimore, Maryland 21202.  Upon information and belief, Optavia is a subsidiary of Medifast, Inc.

8.     Defendant Medifast, Inc. is a Delaware corporation headquartered in Baltimore, Maryland and located at 100 International Drive, 18th Floor, Baltimore, Maryland 21202.  Medifast is a weight loss company that was founded in 1980.  Medifast's weight loss programs have undergone numerous re-brandings over the years.  Upon information and belief, in or about 2016 or 2017, Medifast re-branded its weight loss program from "Take Shape for Life" to "Optavia."  In the summer of 2020, Medifast announced it had "nearly tripled its revenue since it introduced **OPTA**VIA in 2016 *and restructured its business to focus on an integrated coach model.*"[2]

## III.    Jurisdiction and Venue.

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendants.

---

[2] *See* "OPTAVIA Hosts New Digital Experience, OPTAVIA Together Live," July 29, 2020, *available at* https://medifastinc.com/pr/optavia-hosts-new-digital-experience-optavia-together-live/ (last visited Feb. 24, 2023) (italicized emphasis added).

Case No. 3:22-cv-00434-BTM-MSB

10.     The Court has personal jurisdiction over Defendants because Defendants purposefully marketed and sold Optavia products to consumers in California, including Plaintiffs.

11.     Venue is proper because a substantial portion of the acts, events, and/or failures to act giving rise to the claims occurred in this District.

## IV.    Facts.

### A.    California Automatic Renewal Law.

12.     The California Automatic Renewal Law (ARL) is part of California's False Advertising Law.  The purpose of the ARL is to "end the practice of ongoing" subscription charges "without the consumers' explicit consent for ongoing shipments of a product."  Cal. Bus. & Prof. Code §17600.  To this end, the law makes it illegal for companies to charge consumers for automatically-renewing shipments of goods, unless the company meets strict disclosure requirements.  This includes both pre-purchase and post-purchase disclosures.

**Pre-Purchase Requirements**

13.     A company must "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer."  Cal. Bus. & Prof. Code §17602(a)(1).   The "automatic renewal offer terms" that must be presented include:

1)      "That the subscription or purchasing agreement will continue until the consumer cancels.

2)      The description of the cancellation policy that applies to the offer.

3)      The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

3

Case No. 3:22-cv-00434-BTM-MSB

4)     The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

5)     The minimum purchase obligation, if any."

Cal. Bus. & Prof. Code §17601(b)(1)-(5).

14.    A "clear and conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code §17601(c).

15.    After presenting all of this information, the company must then obtain the "consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms." Cal. Bus. & Prof. Code §17602(a)(2).

**Post-Purchase Requirements**

16.    After the purchase, the company must provide "acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code §17602(a)(3). In addition, the acknowledgment must provide a "cost-effective, timely, and easy-to-use mechanism for cancellation." Cal. Bus. & Prof. Code §17602(b).

**B.    Defendants charge consumers for automatically-renewing weight loss products, in violation of the Automatic Renewal Law and other consumer protection laws.**

**1.    Defendants use multi-level marketing to sell subscription weight loss products.**

17.    At all relevant times, Defendants offered, via the Optavia website, various food products, plans, and services related to weight loss. Defendants offered meal plans such as the Optimal Weight 5&1 Plan, Optimal Weight 4&2&1 Plan, and the Optimal Health 3&3 Plan, as well as individual food products referred to as Fuelings, such as

Essential Smoky BBQ Crunchers or Jalapeno Cheddar Poppers.  The 5 & 1 Plan is pictured below:



18.     Optavia is a multi-level marketing company.  It recruits ordinary consumers to be Optavia "coaches," to market and sell Optavia products to their friends and family. Optavia's business is driven by automatically-renewing product subscriptions. According to Defendants' January 2021 investor presentation, subscription-based purchases account for 92% of their total revenue.  In this presentation, Defendants highlight that the average Optavia client spends thirty times more money on diet products compared to industry benchmarks.  According to Defendants, more than 75% of Optavia's customers are charged for at least one renewal fee and nearly 50% of customers get charged four or more times.  The reason for these extreme results is Defendants' illegal automatic renewal scheme.

19.     Defendants' automatic renewal scheme is called Optavia Premier. Defendants market Optavia Premier as an exclusive program in which members can "enjoy exclusive perks like extra savings, rewards, free or reduced shipping and more!" Defendants refer to Optavia Premier as an "autoship program" and state that "Premier member orders ship automatically each month, so your progress will never be interrupted or delayed."  While Defendants refer to Optavia Premier as an "autoship program"," it is in every respect an automatically-renewing subscription and constitutes an automatic

5

renewal and/or continuous service plan or arrangement under Cal. Bus. & Prof. Code §17601.  The Optavia Premier membership can and does reach costs totaling $500 per month.

### 2. Defendants' online Optavia Premier enrollment process violates the Automatic Renewal Law and misleads reasonable consumers.

20.  One of the ways in which consumers purchase Optavia products ~~in two ways.  First, the consumer can buy the products themselves,~~and services is directly from the Optavia website.  ~~Second, a coach can take a consumer's payment information and place an order for the consumer.~~ Through ~~both~~this purchase ~~methods~~method, Optavia systematically enrolls consumers in its Optavia Premier program, in violation of the Automatic Renewal Law and other consumer protection laws.  As addressed below, an Optavia coach can also take a consumers' payment information and order for a consumer. In this situation, the coach places the order through the Optavia website.

21.  At all relevant times, Defendant Medifast managed the Optavia website (including the Premier enrollment process) and was responsible for making sure that the Optavia website was professional, up-to-date, and functioning as intended.  Defendant Medifast oversaw and was directly responsible for management of the Optavia website including but not limited to general maintenance, security, long-term development, organization of content delivery, and marketing strategy, as evidenced by, *inter alia*, the screenshot below:



o. 3:22-cv-00434-BTM-MSB

21.22. On the Optavia website, Defendants' automatic renewal program works as follows. Any consumer who selects a product for purchase is directed to a checkout page on the Optavia website, illustrated below:

| PRODUCT | | UNIT PRICE | QTY | SUBTOTAL |
|---|---|---|---|---|
| | OPTAVIA Guide<br>SKU# 37883 | FREE | 1 | FREE |
| | Journey Kickoff Card Insert<br>SKU# 50038 | FREE | 1 | FREE |
| | OPTAVIA Guide Top Tips Insert<br>SKU# 50039 | FREE | 1 | FREE |
| OPTAVIA | Get 1 Week FREE with your OPTAVIA<br>Premier order (up to $121.25 Value)!<br>SKU# 79938 | FREE | 1 | FREE |
| Edit Free Meal | Free Meal includes:<br>• 1 Essential Sour Cream & Chive Mashed Potatoes (Box)<br>• 1 Select Buttermilk Cheddar Herb Biscuit Mix (Box)<br>• 1 Select Honey Chili Cranberry Nut Bar with Flaxseeds, Pumpkin Seeds, and Almonds (Box)<br>• 1 Select Chocolate Cherry Ganache Bar with Dried Cherries and Pomegranate (Box)<br>• 1 Select Dark Chocolate Coconut Curry Bar with Almonds and Sea Salt (Box) | | | |
| | OPTAVIA BlenderBottle® Classic<br>SKU# 50015 | FREE | 1 | FREE |

**Congratulations! You are now enrolled in OPTAVIA Premier.**

**These seasonal bundles are available for a limited time only. Add them to your order today!**

✓ Yes, I would like to join OPTAVIA Premier
I have reviewed and agree to the OPTAVIA Premier Terms and Conditions. I understand that OPTAVIA Premier is an autoship program and that by enrolling in OPTAVIA Premier I will automatically be charged for and receive an OPTAVIA Premier order each month unless I modify my order, change my ship date or cancel my membership. I also understand that I can modify my order or cancel my membership at any time by calling 1-888-OPTAVIA or by logging into my online OPTAVIA account.

ORDER SUMMARY

ENTER PROMO CODE  +

| | |
|---|---|
| Subtotal | $428.20 |
| Delivery Charge: | FREE |
| Estimated tax: | $0.00 |
| Order Total: | $428.20 |

**Checkout**

22.23. The purported disclosures fail to comply with the Automatic Renewal Law, in several ways. The enrollment process also misleads reasonable consumers into thinking that they are not being signed up for auto-renewing shipments and charges.

23.24. To begin, the option box to enroll in Optavia Premier is pre-checked. This is the opposite of how an affirmative consent box is supposed to work. It is designed to, and does, cause reasonable consumers to miss the fact that they are being auto-enrolled. In order to unenroll from Optavia Premier, the consumer must affirmatively uncheck the box. In other words, instead of affirmative consent (which is legally required), the process requires affirmative opt-out (which is illegal).



7

~~24.~~25. In addition, as illustrated above, the information about the Optavia Premier program is in the smallest font on the page, set off to the side, and with the least contrast against the background compared to all the other text. The page is designed so that a reasonable consumer will click the prominent "Checkout" button without noticing that they are being signed up for automatically-renewing shipments and charges.

~~25.~~26. Next, regardless of the Optavia item that the consumer selects to purchase, the relevant portion of the checkout page presents the consumer with a banner stating "Congratulations! You are now enrolled in OPTAVIA Premier."



~~26.~~27. This box confusingly suggests to the consumer that they have already been enrolled in Optavia Premier, before Defendants have obtained any kind of consent whatsoever. Again, this is the opposite of clear and conspicuous, affirmative consent.

~~27.~~28. Beyond this, the page does not disclose the amount of the charge that will be recurring on a month-to-month basis, the length of time that the auto-renewal subscription will remain in place, or the minimum purchase.

~~28.~~29. Once the consumer clicks the "Checkout" button, the consumer is redirected to a webpage to complete their purchase where, among other things, the consumer creates a username and password, enters a delivery address, and inputs their payment method. Notably, once the consumer clicks the "Checkout" button, no subsequent webpage for completion of the purchase discloses or mentions the consumer's enrollment in Optavia Premier or its terms and conditions. Once the consumer inputs the requested information to complete the purchase, the consumer is enrolled in Optavia Premier and, every month from that date forward, Defendants will automatically charge the consumer's payment method and ship products.

8

### 3. Defendants' process for enrolling customers in Optavia Premier through coaches violates the Automatic Renewal Law and misleads reasonable consumers.

30. As mentioned above, one way for consumers to purchase Optavia products and services is through a coach. Coaches are trained and instructed to take a consumer's payment information and place an order for the consumer using the Optavia website. Through this purchase method, Optavia systematically enrolls consumers in its Optavia Premier program, in violation of the Automatic Renewal Law and other consumer protection laws.

31. When customers are enrolled through coaches, the disclosures are equally deficient, if not even more deficient. Coaches are systematically trained by Defendants to tell customers that the coaches can purchase on their behalf, to take customers' payment information, and to enroll customers. In particular, Defendants train coaches to: 1) learn about consumers' weight loss and health goals; 2) describe the health and weight loss benefits of the products; 3) instruct consumers how to use the products (e.g., what food to eat, timing of meals, recipes to use), and, crucially, to 4) affirmatively represent to consumers that the coaches can take a consumer's payment information and place an order.[3] By affirmatively representing that they can place an order, coaches suggest to reasonable consumers that they are placing a single order. This is, after all, how ordering a product normally works.

~~29.~~32. But coaches systematically fail to even disclose to consumers that they are being auto-enrolled, much less comply with the detailed requirements of the Automatic Renewal Law. This is because ~~Optavia's coach training materials systematically (and Defendants~~ intentionally~~) fail to~~ do not train coaches to ~~comply with~~ walk consumers

---

[3] Before discovery, Defendants have unique access to any training or materials actually provided to Plaintiffs' coaches, by Defendants. Plaintiffs make these allegations based on their own interactions with their coaches, which are now described in detail below.

9

1  through the ~~Automatic Renewal Law.  And when customers are auto-enrolled via~~

2  ~~coaches, they receive~~requirements of the ~~same wholly deficient confirmation email~~

3  ~~described above.~~ARL and obtain sufficient consent.

4      33.    ~~In sum, either way a~~Furthermore, coaches are trained to enroll consumers in

5  Optavia Premier (the automatic renewal program) via the Optavia website.  As detailed

6  above, the website flow automatically enrolls the consumer ~~buys Optavia products,~~in

7  Premier (using a pre-checked box).  This is designed, by Defendants, so that the coach

8  does not have to affirm that the consumer affirmatively consented to automatic renewal.

9      34.     In this way, Defendants systematically (and intentionally) fail to train

10  coaches to comply with the Automatic Renewal Law ~~and mislead~~.

11      ~~30.~~35. Defendants have exclusive knowledge of material facts not known to

12  Plaintiffs and other reasonable consumers ~~about whether~~: that Defendants are enrolling

13  consumers in an automatic renewal program, without sufficient disclosures or consent.

14  Defendants make partial disclosures but omit material facts when they ~~are being signed~~

15  ~~up~~actively train coaches to give disclosures on all the information identified above, but

16  do not train coaches to comply with the ARL.  And Defendants do train coaches to

17  misleadingly suggest that they are only placing an initial order, when in reality the

18  website automatically enrolls the customer for ~~automatic, monthly charges.~~recurring

19  orders.

20      36.    ~~3.    Defendants' post-order acknowledgement~~At all relevant times,

21  Defendant Medifast managed the Optavia coach program and was responsible for making

22  sure that the Optavia coach program was professional, up-to-date, and functioning as

23  intended.  Defendant Medifast oversaw and was directly responsible for management of

24  the Optavia coach program including but not limited to development of the program and

25  materials for training Optavia coaches, as evidenced by, *inter alia*, the screenshot on the

26  following page:

27

28

10

Case No. 3:22-cv-00434-BTM-MSB



37.    In addition, publicly available LinkedIn profiles for persons who list past or current positions at "Medifast, Inc." establish that Medifast employees have, at all relevant times, been intimately involved in selling Optavia products and services. *See* LinkedIn Profiles attached hereto at Exhibit "A."

38.    Medifast's executive leadership confirms that Medifast itself markets and sells the accused Optavia products and services. On his LinkedIn profile, "Medifast, Inc." Chief Marketing Officer and Chief Operating Officer Anthony Tyree explains that he is "[r]esponsible for formulating and leading growth strategies for one of the fastest growing health & wellness brands – OPTAvia . . . [and a] key driver of the expansion of the OPTAvia brand proposition globally as company expands outside of US to Asia Pacific." *See* Exhibit "A."

39.    Other employees at Medifast state their involvement in marketing and selling accused Optavia products and services. For example, Morgan Ringgold Voluntad, a Marketing Specialist at "Medifast, Inc." states on her LinkedIn job description that she "[c]reate[s] and develop[s] copy to be used across OPTAVIA media, communications,

tools and marketing materials, demonstrating a deep understanding of both the unique nature of the OPTAVIA business and the special groups receiving communications Field Leadership, OPTAVIA Coaches, Health Professionals, Clients, and the corporate team. … Serve[s] as day-to-day editor and proofreader of content for all OPTAVIA communications and marketing materials."  *See* Exhibit "A."

40.     Defendants' deliberate failure to train their coaches to comply with the ARL when selling Defendants' products and services to a vulnerable cohort of consumers who seek solutions to weight loss problems violates California law and specifically Section 17602(a)(3).

### 4.     Defendants' post-order acknowledgment violates Automatic Renewal Law and misleads reasonable consumers.

~~31.~~41. After consumers are enrolled in Optavia Premier, Defendants send consumers an email confirming their purchase (the "Acknowledgement Email").  A true and correct copy of Plaintiff Zeller's Acknowledgement Email is attached hereto at Exhibit "B."  The subject line of the Acknowledgement Email states: "Optavia Order confirmation:" with an order number listed.  A screenshot example of the Acknowledgement Email appears as follows:

32.42. The Acknowledgement Email does not contain any information to inform the consumer about Defendants' auto-renewal policy or cancellation policy. Most notably, the Acknowledgement Email does not inform the consumer that she has enrolled in Optavia Premier and that it is a membership program that will charge her payment method on a recurring and monthly basis. To the contrary, the Acknowledgement Email appears to indicate that the consumer is not an Optavia Premier member as the body of the email states: "Don't miss out - thousands of people like you are already benefiting from OPTAVIA Premier membership." The Acknowledgement Email further states, "Don't forget, if you're an OPTAVIA Premier member, your order qualifies for Rewards and even free shipping on qualifying orders." Given these confusing and misleading statements, a reasonable consumer would conclude that they areshe is not an Optavia

Premier member.  Additionally, the Acknowledgement Email does not disclose the following information:

    1)    "That the subscription or purchasing agreement will continue until the consumer cancels.

    2)    The description of the cancellation policy that applies to the offer.

    3)    The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

    4)    The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

    5)    The minimum purchase obligation, if any."

Cal. Bus. & Prof. Code §17601(b)(1)-(5).

    33.43. As such, the Acknowledgement Email fails to "include[] the automatic renewal offer terms …, …, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer" in violation of Section 17602(a)(3).

    **45.**    **Defendants fail to provide a "cost-effective, timely, and easy-to-use mechanism for cancellation."  Instead, Defendants systematically continue to charge consumers who try to delay, cancel, or return shipments.**

    34.44. As described above, the ARL requires that Defendants conspicuously present their full cancellation policy at the time of purchase and provide a post-sale acknowledgment identifying an easy and efficient mechanism for consumers to cancel their subscriptions.  Defendants' coaches, website and Acknowledgement Email fail to satisfy either of these requirements.  Instead, Defendants systematically make it confusing and difficult to cancel Optavia Premier subscriptions and continue to charge consumers who have attempted to cancel.

~~35.~~45. With respect to cancellation, the relevant portion of the checkout page states: "I can modify my order or cancel my membership at any time by calling 1-888-OPTAVIA or by logging into my online Optavia account."  This vague description ~~on~~of the cancellation procedure is not a sufficient disclosure.  Moreover, BBB complaints show that canceling Optavia's automatic renewals can be difficult, frustrating, and time-consuming.  Worse, Optavia fails to honor requests to delay, refund, or cancel orders, and continues to fraudulently charge consumers.

~~36.~~46. The following screenshots of customer complaints from the BBB website are illustrative:

12/01/2021

This company puts you automatically on an autoship policy. The order has not even shipped and was in process just today. I called and wanted them to refund my money and they were not helpful. I explained I do not want my account on autoship and if the order has not shipped they should be able to cancel the order. I was given the run around about opening a case and having to do a return to distributor on their end and even so it wasn't 100% guaranteed to get my money back. If they are doing an "in house" return then I should get my money!!! They shouldn't tie peoples money up with all of this back and forth!!! It's ridiculous!! I just want the money taken from my account put back in as the order has not even SHIPPED to me at all!!!

**Desired Outcome**
Refund

09/28/2021

On June 30th 2021 Optavia shipped a box of products to my home which was received on July 12th. the cost of the box was $299.67. I intern cancelled my services with Optavia and returned the box to them. My bank card was not charged the $299.67 at the time. The box was returned via USPS with a tracking #XXXX XXXX XXXX XXXX XXXX XX and received by them on July 26, 2021 at 11:30. On September 27, 2021 I received an e-mail that Optavia stating that they were going to charge me for the 299.67. I called them and gave them the tracking # but they still have made attempts to charge my card. I have called 3 times only to be told they have forwarded the case to the operations department without the case being resolved. I want my card information removed from Optavias system and for them to stop attempting to put this charge on my card. My bank has been made aware. At 9:30am 9/28 Optavia made another attempt to charge my card.

**Desired Outcome**
No further contact by the business

15

07/20/2021

I was sent an email on on July 4th that my box was to ship. I called customer service and asked that they cancel cancel this shipment. I went in and canceled my account out. I was assured that The shipment would be stopped and the money would not come from my account. On July 17th I received an email that my Box was shipping. I called customer service was told they would try to stop the shipment. July 18th, the money was taken out of my account, but the tracking number showed that it had not yet shipped. I called customer service. Spoke w a supervisor, she samtated they would escalate the issue w their operations support team. 7/20, called again. Box still showing as label being created. Being told they still need to try to intercept box, but can't put money back into my acct. Even though, bills i paid are bouncing because they took the money w out my authorization or w out me receiving product. They give me the same scripted answer when i call. I need help!

**Desired Outcome**
Refund

07/16/2021

Date of transaction: 7/16/21 I ordered a nutrition program from Optavia 5/13/21 for $364. On 7/1/21 I canceled my future orders. I noticed that $419 was removed from my bank account from Optavia. I have been on the phone with their customer support all morning and the order HAS NOT even shipped yet and they refuse to issue a refund. Please help

**Desired Outcome**
Refund

07/14/2021

In lake June 2021 I received notice that my order was going to ship in seven days. I logged into my account and canceled the order, only to get notification on July 1, 2021, that my order is shipping. I called that morning and talked to client support, which told me they are canceling my order and future repeat orders. At that time I had not been charged. Today, July 14, 2021, I was charged $633.61 for the order I canceled. When I called Client Support again today I was told they need to get the package, which has not been mailed, back before they can refund the money. 1) The order was canceled two weeks ago, and 2) the order still has not been shipped or filled as only a tracking label has been created. They cannot give me a time or estimate of when this will be fixed, even after it should not have happened.

**Desired Outcome**
Refund

07/02/2021

On June 30, 2021 at 10:00am a health coach from Optavia sold me on their food and health plan, she told me that my credit card would not be charged for 3 weeks when the food was mailed to me. She also said that I could cancel my order at anytime. On the same day, June 30, 2021 at 2:58pm I let the health coach know that I did not want the food and I wanted to cancel my order. The next morning, July 1, 2021 at 9:21am the health coach told me that my order could not be canceled. I then checked with my credit card company and my card was already charged but a customer representative from Optavia told me that my order was not shipped. Now I have to wait 3 weeks, receive the order, and then at my expense (because Optavia does not send prepaid return labels) return it and wait for a refund. I want my order canceled now and my credit card refunded- as it should not have been charged in the first place because nothing was shipped to me. This company is a scam to take my money.

**Desired Outcome**
Refund

\*   \*   \*

37.47. In sum, for every subscription product purchased from the Optavia website, Defendants fail to make the legally required disclosures, fail to obtain affirmative consent

16

Case No. 3:22-cv-00434-BTM-MSB

for automatic recurring charges, misrepresent and conceal material facts regarding Optavia Premier, and mislead reasonable consumers into thinking that they are simply making a one-time purchase.  Defendants then make it difficult to cancel and fraudulently continue to charge consumers who seek refunds or cancellation.  And as described next, Defendants do all of this knowingly.

### 5.   Defendants know that their automatic renewal scheme is misleading consumers.

~~38.~~48. Defendants are well aware that their auto-enrollment scheme is deceiving consumers.  Through the BBB, Optavia has received hundreds of complaints from customers.

~~39.~~49. The complaints listed on the BBB website echo ~~Plaintiff's~~Plaintiffs' experience, as consumers complain that they were unaware that they would be auto-enrolled in a monthly subscription plan.  The following complaints are illustrative:

Chayah M
★☆☆☆☆                                                    12/02/2021

This company's dark pattern practices online results in holding your personal information and credit info hostage leading to unwanted monthly orders. I've repeatedly requested my information be deleted from their database only to be given a link to go to, on their policy page, where you have to sift through paragraphs of irrelevant information to find the place to then fill out another form that creates a "case #" to request your credit card and contact info be removed from their database. Despite cancelling an order within 24 hours of my initial introduction to this company, I had another order placed on my credit card 30 days later that I then had to request be cancelled again and tried to get my information removed from their system only to be emailed the same policy page link to ask for my information to be removed again. I have stated unequivocally to this company that I will never do business with them yet they continue to email me. This is a terrible company and there should be federal legislation against this type of consumer abuse and privacy violations.

17

05/25/2021

My coach placed my order via debit card on May 15th for a $416 dollar kit. My kit still says it's "in processing" but my BF ordered after me (a week later) and his has been shipped. I called customer service and was told " we are experiencing demands we can't meet and deliveries are taking longer than usual. Most of our orders are being shipped out without tracking" So, I paid $416 and have no idea if it shipped or not and who knows where it is? I went through my bank statements and it doesn't even show charged even though it was told it was? Best thing? I found out that I was signed up for automatic shipping/bill and I wasn't even informed of this? My next scheduled shipment is June 11th and I haven't even received my first box but they have me already scheduled? I have no food and no way to track where it is but my bf who orders after me has tracking and his box??? Help?

**Desired Outcome**
Contact by the business

05/03/2021

I did not sign up for "autoship" and feel this business practice is deceptive. I have requested for order #********** to be canceled and NOT SHIPPED while it is still showing as in process and has, in fact, not already shipped. The "customer service rep" denied saying there is simply no way to do that. That she would send me a return label simply so that I have to pay for shipping to Optivia and again to ship it back. I am requesting for the $341.59 to be immediately refunded to my credit card and if they continue to refuse to cancel the order, that they send me a prepaid shipping return label for this false shipment to be returned. Additionally, I am requesting for my credit card information to be removed from the Optivia database to ensure no further unauthorized charges can be made to my account.

**Desired Outcome**
I am requesting for the $341.59 to be immediately refunded to my credit card and if they continue to

Saadya H

 ★☆☆☆☆                                      07/08/2020

Optavia products cause severe GI issues which aren't resolved by discontinuing their snack bars or fuel bars. The ingredients in their products have caused severe GI issues starting from day 2 and day 4th on their products was full blown symptoms that impaired functioning for that day.Contacting the agency has long wait time which was already mentioned by their rep. One wonders why the long wait time is predicted! Their selling involves zero disclosure as to what the company name is, how much would be charged as a whole to one's cc and enrolling in automatic renewal of products without client's consent. To cancel a cc on file isn't an option on their website either. I was made aware by my cc company when I lost my wallet and found out that my cc info was put on default on company's website and that I had no way of cancelling my cc info. I do not appreciate being signed up for something based on trusting a rep and given zero information/disclosure on company name, and cost of products in order to form my own informed decision in the end.

06/12/2020

Billed for an order i did not want. They did auto re order and charged me $447 that i did not authorize or want. They refused to cancel the order. So i had my bank dispute the charge. The charge was dropped from my pending. That was Monday 6/8. I woke up today with a new charge for the same order.

**Desired Outcome**
I want my money back and for them to not do this to other people.

18

Case No. 3:22-cv-00434-BTM-MSB

04/12/2019

Company sells products, with a return guarantee. Still waiting for a return filed months ago... This is easy, their "coach" sets up their "auto order" system. It is auto populated to continue sending you random products... it "auto ordered" us over $500 worth of food, that we did not want... Nobody will answer the phone, and nobody will give us our money back. This is fraud, pure and simple...

**Desired Outcome**
A full refund.

03/05/2019

Automatically charged for an order I did not make or want On February 4th a order was placed by my Optavia coach ( can provide name if needed) for my starter kit costing $356.15. I was told he had to place my first order for me. Never was I told my card would automatically be charged every month after. On March 4th I received a email at 3am that I was charged for my second order #********** costing 425.28 which I did not place or approve. I went online and got into my profile which my coach had set up and cancelled the order at 4:56 am cancellation #********. That same morning I called the 888-******** which gave a busy signal. I called my Optavia coach and informed him and he said he was sorry and would also call to have my order cancelled. I called the same number multiple times till I got through after holding for 1 hour and 47 minutes. I spoke to Marquis who could not give a last name. He said he saw the order was placed at 3am that morning and was going to put in a form to have the order canceled but wasn't sure if it would be in time. He said I was going to receive a email that this cancellation was made. After not receiving the email today I called back and again got a busy signal. After holding for 1 hour and 25 minutes I spoke to Marquis again and he then told me they don't send out emails when a RT form is sent. I asked to speak to a supervisor and spoke with Amika who said I would only receive a email if the cancellation was successful or to let me know if it was not. I asked to have a second email added to my information because I seemed to not be receiving any emails besides when being charged. I also asked Amika for a direct email to Optavia and she said she did not have one. They have you send emails through their website which leaves you no proof of ever trying to contact them. This company is clearly a pyramid and scam company . The coaches make money off everyone they get to join Optavia and that is why they place your order and don't tell you of future charges. How can a order that has only been placed hours before being cancelled not be cancelled on the company's end. Why are there not emails provided or working phone numbers. They make it as hard as possible to get your refund. After reading multiple complaints which I had wish I had seen prior. I see that their next move is to still send the order and then when you return it say they never got it. This company needs to be shut down so people don't continue to be scammed.

**Desired Outcome**
All I want is my order to be cancelled. I don't want it sent and then have to play their return game. I want my full refund of $425.28 asap.

40.50. There are hundreds more similar complaints on the BBB website, and many of these complaints contain various responses from Optavia, which demonstrates Optavia's knowledge of the problems.

41.51. Thus, after receiving hundreds of complaints from customers who were misled about Optavia's auto-recurring charges, Defendants knew or should have known that they were misleading consumers.

### 6.   Defendants misled and harmed Plaintiffs Zeller and Alpert.

42.52. The experience of Ms. Zeller and Ms. Alpert is typical of other Optavia customers harmed by Defendants' auto-enrollment scheme.

19

53.     As has been reported for years, the United States is facing an obesity epidemic.  Excess weight and obesity are major contributors to chronic diseases and present a serious public health challenge.  As a result, Americans spend billions of dollars every year on weight loss products and services.

54.     As a result, the weight loss industry is an area where consumers looking for a solution are particularly vulnerable to deceptive sales tactics.

55.     The law recognizes this vulnerability and seeks to protect consumers like Plaintiffs and class members by mandating that companies like Defendants provide overt and conspicuous disclosures to consumers before signing them up for continuous charges that automatically renew (ARL), and disclosures are particularly important in the weight loss industry (WLCL).

56.     Like other reasonable consumers, Plaintiffs Zeller and Alpert were misled because they believed they were only making a one-time purchase, when in fact Defendants and Defendants' agents were signing Plaintiffs up for recurring monthly subscription charges without their knowledge or consent.

**Plaintiff Zeller**

57.     In the summer of 2021, Plaintiff Zeller was interested in losing weight.  She was solicited by her coach to try Optavia.[4]  Ms. Zellers' coach described the weight loss and health benefits of the products and services, instructed Ms. Zeller to take body measurements and photos, pointed Ms. Zeller to recipe resources, gave her hunger-management and diet tips, and instructed her on what Optavia products to eat and when.  Ms. Zeller's coach also told Ms. Zeller that the coach could place an order for her, and took Ms. Zeller's payment information, without mention of automatic renewal.  This reasonably suggested to Ms. Zeller that her coach was just placing a one-time order.  All of this was pursuant to how Medifast and Optavia train their coaches.

---

[4] Plaintiffs are suing Defendants (not their coaches) and do not name their coaches here, to avoid unnessarily invading their privacy. Defendants know the identity of Plaintiffs' coaches, through their own records.

20

43.58. On or about July 3, 2021, Plaintiff Zeller purchased the Optavia Essential Optimal Kit (5&1 Plan) from the Optavia Website on about July 3, 2021, through her coach. She Plaintiff Zeller was auto-enrolled in Optavia Premier without her knowledge or consent (much less the required affirmative consent).  At the time of purchase and enrollment, Plaintiff Zeller provided her credit card information to Defendants, via her coach.

59.    Prior to giving her consent to the offer to buy Defendants' products and services through Optavia Premier on or about July 3, 2021, Plaintiff Zeller did not receive any disclosures from her coach or otherwise: (a) that Optavia Premier is a subscription program with automatic renewal terms; (b) that delivery of Optavia products and services will continue every month until she cancels; (c) that Optavia Premier has a cancellation policy with terms; (d) that recurring charges will be charged to Plaintiff Zeller's payment method every month in a specific amount; and/or (e) that monthly delivery of the products and services with associated charges will be continuous with no expiration date.

44.60. After Plaintiff Zeller completed her initial purchase, Defendants sent Plaintiff Zeller an Acknowledgement Email confirming that Defendants had processed a charge of $409.60 to Plaintiff Zeller's credit card.  Plaintiff Zeller's Acknowledgement Email is misleading and defective in several respects.  As illustrated above, it does not disclose the renewal policy, or the renewal terms, or the amount of the monthly charge, or the length of time that auto-renewal will continue.  Plaintiff Zeller's Acknowledgement Email also failed to provide notice of the cancellation policy for Optavia Premier.

45.61. As a result of Defendants' misrepresentations and deficient disclosures, when Plaintiff Zeller was enrolled, she was unaware that Defendants had enrolled her in an "automatic renewal" program under which she would be charged for product products each month.  Plaintiff believed she was just signing up for a one-time purchase.

46.62. After Plaintiff Zeller's initial purchase in July 2021, Defendants began automatically charging her for renewals.  Ms. Zeller's card was automatically charged for the following Optavia orders:

21

| Date | Charge |
|---|---|
| 8/5/21 | $421.67 |
| 9/2/21 | $386.83 |
| 10/1/21 | $202.27 |
| 10/29/21 | $190.19 |

47.63.In or around November 2021, Plaintiff sought to cancel her Optavia Premier membership in order to cease the automatically-renewing and recurring charges. Optavia's online cancellation procedure was a multi-step process that was needlessly time-consuming.  On or around December 2, 2021, Plaintiff received confirmation of cancellation.

48.64.If Plaintiff Zeller had known that Defendants were automatically enrolling her in a subscription program with monthly recurring charges to her payment method, she would not have purchased any products from Optavia (much less recurring purchases).

**Plaintiff Alpert**

65.    In the summer of 2020, Plaintiff Alpert was interested in losing weight.  She was solicited by her coach, to try Optavia.  Plaintiff Alpert's coach advised her to not weigh herself more than once per week and to manage her hunger by drinking more water.  Just after the time she signed up for Optavia, Plaintiff Alpert planned to leave on a camping vacation and her coach suggested that Alpert could begin the diet meals after Alpert returned from her trip, and her order would be waiting for her.  Ms. Alpert's coach told Ms. Alpert that the coach could place an order for her, and took Plaintiff Alpert's payment information, without mention of automatic renewal.  This reasonably suggested to Ms. Alpert that her coach was just placing a one-time order.  All of this was pursuant to how Medifast and Optavia train their coaches.

49.66.On or about August 9, 2020, Plaintiff Alpert purchased the Optavia Essential Optimal Kit (5&1 Plan) and Habits of Health System from the Optavia Website on about August 9, 2020, through her coach.  ShePlaintiff Alpert was auto-enrolled in Optavia

22

Premier without her knowledge or consent (much less the required affirmative consent). At the time of purchase and enrollment, Plaintiff Alpert provided her credit card information to Defendants, via her coach.

67.    Prior to giving her consent to the offer to buy Defendants' products and services through Optavia Premier on or about August 9, 2020, Plaintiff Alpert did not receive any disclosures from her coach or otherwise: (a) that Optavia Premier is a subscription program with automatic renewal terms; (b) that delivery of Optavia products and services will continue every month until she cancels; (c) that Optavia Premier has a cancellation policy with terms; (d) that recurring charges will be charged to Plaintiff Alpert's payment method every month in a specific amount; and/or (e) that monthly delivery of the products and services with associated charges will be continuous with no expiration date.

50.68. After Plaintiff Alpert completed her initial purchase, Defendants sent her an Acknowledgement Email confirming that Defendants had processed a charge of $451.17 to her credit card.  This email was very similar to the email sent to Plaintiff Zeller, and was equally defective, as described above.

51.69. Around September 16, 2020, Plaintiff Alpert's payment method was automatically charged (for $364.65) and shortly thereafter a new order showed up at her house that she did not want.  She told her coach that she wanted to cancel immediately, but her coach persuaded her to pause her orders for a month.

52.70. In November, before she received another order, Ms. Alpert attempted to cancel online, but was unable to cancel.  She then instructed her coach to cancel for her. She received a confirmation of cancellation on November 18, 2020.

53.71. If Plaintiff Alpert had known that Defendants were automatically enrolling her in a subscription program with monthly recurring charges to her payment method, she would not have purchased any products from Optavia (much less recurring purchases).

Case No. 3:22-cv-00434-BTM-MSB

**V.     Class action allegations.**

~~54.~~72. Plaintiffs bring this action on behalf of a class of similarly situated individuals.  The Class is defined as follows:

> All Optavia/Medifast customers in the state of California who were automatically enrolled in Optavia Premier and were charged at least one renewal fee by Defendants, within the governing statute of limitations period.

~~55.~~73. Excluded from the Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assignees and any entity in which they have or have had a controlling interest.  Also excluded are all federal, state and local government entities; and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff.

*Numerosity*

~~56.~~74. Plaintiffs do not know the exact size of the Class, since this information is in the exclusive control of Defendants.  Plaintiffs believe, however, that based on Defendants' assertions, the Class encompasses hundreds of thousands of individuals whose identities can be readily ascertained from Defendants' records.  Accordingly, the members of the Class are so numerous that joinder of all such persons is impractical.

*Ascertainability*

~~57.~~75. The Class is ascertainable because its members can be readily identified using data and information kept by Defendants in the usual course of business.  Plaintiffs anticipate providing appropriate notice to each Class member, in compliance with all applicable federal rules.

*Typicality*

~~58.~~76. Plaintiffs Zeller and Alpert are typical and adequate class representatives. Their claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.  Plaintiffs and the other members of the Class were

subject to the same or similar deceptive marketing and billing practices.  Further, Plaintiffs and members of the Class sustained substantially the same injuries and damages arising out of Defendants' conduct, including unjust purchase and renewal fees. Plaintiffs will fairly and adequately protect the interests of all Class members.  Plaintiffs have retained competent and experienced class action attorneys to represent their interests and those of the Class.

### Commonality and Predominance

59.77. Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members, and a class action will generate common answers to questions that drive the resolution of this case.  For example, common questions of law and fact include the following:

- Whether Defendants' pre-purchase conduct constitutes unfair, unlawful and/or fraudulent practices prohibited by the laws of California;
- Whether Defendants were unjustly enriched as a result of their conduct;
- Whether Defendants' post-purchase conduct constitutes unfair, unlawful and/or fraudulent practices prohibited by the laws of California;
- The extent of class-wide injury and the measure of damages (or restitution) for those injuries; and.
- Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices.

### Superiority

60.78. A class action is superior to all other available methods for resolving this controversy because: i) the prosecution of separate actions by Class members will create a risk of adjudications with respect to individual Class members that will, as a practical matter, be dispositive of the interests of the other Class members not parties to this action, or substantially impair or impede their ability to protect their interests; ii) the prosecution of separate actions by Class members will create a risk of inconsistent or varying adjudications with respect to individual Class members, which will establish

Case No. 3:22-cv-00434-BTM-MSB

incompatible standards for Defendants' conduct; iii) Defendants have acted or refused to act on grounds generally applicable to all Class members; and iv) questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

61.79. Further, the following issues are appropriately resolved on a classwideclass-wide basis under Fed. R. Civ. P. 23(c)(4):

- Whether Defendants' pre-purchase conduct constitutes unfair, unlawful and/or fraudulent practices prohibited by the laws of California;

- Whether Defendants were unjustly enriched as a result of their conduct;

- Whether Defendants' post-purchase conduct constitutes unfair, unlawful and/or fraudulent practices prohibited by the laws of California;

- Whether Class members have been injured by Defendants' conduct;

- Whether any or all applicable limitations periods are tolled by Defendants' acts;

- Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices; and

- The extent of class-wide injury and the measure of damages (or restitution) for those injuries.

62.80. Accordingly, this action likely presents no difficulties in management that would preclude maintenance as a class action and satisfies the requirements set forth under Fed. R. Civ. P. 23(a), 23(b), and 23(c)(4).

## VIVI. Remedies and Inadequate Remedy at Law

81.   Plaintiffs and Class members seek a refund of the price of Optavia boxes shipped in violation of the laws asserted here.  Based on the previous complaint, the Court found that Plaintiffs were seeking a refund both at law and equity, and therefore failed to satisfy *Sonner*.  Dkt. 38 at 13-14.  Here, Plaintiffs clarify the relief they are seeking.

82.     Plaintiffs seek a full refund based on the ARL's "unconditional gift" provision. Cal Bus. & Prof. Code Section 17603. That provision provides that goods shipped in violation of the ARL are deemed to be unconditional gifts, meaning that consumers have no obligation to pay for or return such goods. Applied here, the "unconditional gift" provision means that the boxes Optavia shipped to Plaintiffs and the Class in violation of the ARL were unconditional gifts that Plaintiffs and the Class had no obligation to pay for. In other words, because under the ARL those boxes were unconditional gifts, Optavia had no right to charge anything at all for them, and Plaintiffs and Class members are entitled to a refund.

83.     As alleged below, Plaintiffs' legal claims (the CLRA, WLCL, and fraud) are based (in part) on violations of the ARL, including charging consumers for boxes that are deemed to be unconditional gifts under the ARL. Thus, for these claims, Plaintiffs plead what is necessary to trigger the unconditional gift provision. As alleged, Optavia's violative conduct caused Plaintiffs and Class members to be enrolled in, and charged for, shipments that were unconditional gifts.[5] If these claims can proceed, and Plaintiffs can seek a full refund as a damages remedy (as a result of their being wrongfully charged for unconditional gifts), then under the Court's prior analysis, Plaintiffs have an adequate remedy at law and will not pursue the equitable claims pled here (FAL, UCL).

84.     In the alternative, if the Court finds that Plaintiffs cannot pursue any legal claim, or that the remedies based on the unconditional gift provision can only be invoked with equitable claims (FAL and UCL), then Plaintiffs have no remedy at law, i.e., no means to pursue the refund that they seek. In this situation, the issue is not that a full refund is harder to prove: it is unavailable because, contrary to the unconditional gift

---

[5] To be clear, Plaintiffs are not relying on the unconditional gift provision to establish standing. As the Court found, Plaintiffs establish standing by alleging that Defendants' ARL violations caused them to pay money that they would not otherwise have paid. Dkt. 38 at 9-12, 19. Rather, they are relying on the unconditional gift provision to establish their entitlement to a refund (in damages or restitution).

27

provision, Plaintiffs would need to account for any objective market value they received from the boxes (regardless of whether they wanted the boxes and regardless of whether they were shipped in violation of the ARL).  In other words, Plaintiffs would have to pay for boxes they did not want, that were shipped to them in violation of the ARL.  This is the very outcome that the unconditional gift provision was passed to prevent: it insulates companies that automatically ship goods in violation of the ARL, and forces consumers to pay for goods they did not legally consent to order.

85.    Notably, when the ARL is violated, consumers *always* have both a potential legal claim (e.g., violating the CLRA, or fraud) as well as a potential equitable claim (for violating the UCL or FAL).  If a refund based on the unconditional gift provision is only available as restitution for a UCL or FAL violation, and not as damages for a CLRA or fraud violation, the mere existence of the legal claims should not foreclose the equitable claims.  This would result in consumers *never* being able to invoke the unconditional gift provision that the legislature passed specifically for the purpose of protecting them, and giving them an additional remedy against, ARL violators.  This is not the holding or intent of *Sonner*.  Instead, *Sonner* is designed to ensure that Plaintiffs do not unnecessarily pursue duplicative remedies in law and equity.  In either law or equity, Plaintiffs should be able to invoke the unconditional gift provision and pursue a refund theory.  It cannot be both—but it must be one or the other.

86.    In the alternative, if the Court finds that Plaintiffs cannot invoke the unconditional gift provision for any claims, it should again dismiss the equitable claims without prejudice, and allow Plaintiffs and Class members to pursue them in state Court (abstaining from any removal).  This is what the Ninth Circuit has instructed: "the district court should have dismissed [plaintiff's] UCL claim without prejudice to refiling the same claim in state court" because "a California court might allow Albright to pursue his UCL claim … where federal law bars us from considering the merits of state-law claims, we also lack authority to prevent state courts from doing so."  *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1314 (9th Cir. 2022).  But the Court need not do this here, because, as

28

Case No. 3:22-cv-00434-BTM-MSB

explained above, Plaintiffs should either be able to pursue their unconditional gift theory at law, or they lack an adequate remedy at law and the Court has equitable jurisdiction over the FAL and UCL claims.

**VII.   Claims.**

### Count 1: False Advertising - California Automatic Renewal Law

63.87. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphsSections I-VI, as if fully set forth herein.

64.88. Plaintiffs bring this claim individually and on behalf of each member of the Class.

65.89. As alleged in detail above, Defendants violated California Automatic Renewal Law in numerous, independent ways:

- Defendants failed to present the terms of their automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual proximity to the request for consent to the offer, as required by Cal. Bus. & Prof. Code § 17602(a)(1);

- Defendants charged Plaintiffs' and the Class's credit or debit cards, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous offer terms, as required by Cal. Bus. & Prof. Code § 17602(a)(2);

- Defendants failed to provide an acknowledgment that includes the automatic renewal offer terms or continuous offer terms, cancellation policy, and information regarding how to cancel, and to allow Plaintiffs and the Class to cancel the automatic renewal or continuous service before they paid for it, as required by Cal. Bus. & Prof. Code § 17602(a)(3); and

- Defendants failed to provide a cost-effective, timely, and easy-to-use mechanism for cancellation described in Cal. Bus. & Prof. Code §§ 17602(a)(3), as required by Cal. Bus. & Prof. Code §§ 17602(b).

29

90.    Plaintiffs were injured by Defendants' misconduct because it caused Plaintiffs to spend money on Optavia products that they would not otherwise have spent.

66.91.As a result of Defendants' misconduct, pursuant to Cal. Bus. & Prof. Code §17603, all recurring Optavia Premier shipments are treated as unconditional gifts, and PlaintiffPlaintiffs and the Class are entitled to restitution of all amounts that Defendants charged or caused to be charged to Plaintiffs' and Class members' payment methods during the applicable statute of limitations and continuing until Defendants' statutory violations cease.

67.    As a result of Defendants' misconduct, pursuant to Cal. Bus. & Prof. Code §17535, Plaintiff and the Class are entitled to an injunction enjoining Defendants (a) from making automatic renewal offers that do not comply with California law; (b) from making charges to customers' payment methods without prior affirmative consent to an agreement containing "clear and conspicuous" disclosures of automatic renewal or continuous service offer terms; (c) from making automatic renewal offers that fail to provide an acknowledgment that includes "clear and conspicuous" disclosure of automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer; and (d) from making automatic renewal offers that fail to provide an online, easy-to-use mechanism for cancellation.

68.    Pursuant to Cal. Bus. & Prof. Code §17535, this Court has the power to award such equitable relief, including but not limited to, an order declaring Defendants' auto-renewal practices to be unlawful, an order enjoining Defendants from engaging in any such further unlawful conduct, and an order directing Defendants to refund to the Plaintiff and the Class all monthly fees wrongfully assessed and/or collected on its auto-renew subscription plan.

### Count 2: Unfair Competition Law (UCL)

69.92.Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphsSections I-VI, as if fully set forth herein.

30

70.93. Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

71.94. Cal. Bus. & Prof. Code §17200, et seq. (the "UCL") prohibits acts of "unfair competition," including any unlawful, deceptive and unfair business acts or practices.

*Unlawful*

72.95. Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.  Defendants committed unlawful practices because, as alleged above and incorporated here, they violated California Automatic Renewal Law. In addition, as alleged below and incorporated here, Defendants violated the CLRA.

*Unfair*

73.96. As alleged in detail above, Defendants committed "unfair" acts by deceiving consumers into signing up for auto-recurring shipments, making it difficult to cancel, and continuing to charge consumers who sought refunds or cancellations.

74.97. The harm to PlaintiffPlaintiffs and the Class greatly outweighs the public utility of Defendants' conduct.  There is no public utility to deceptive automatic renewal practices.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading auto-renewal practices only injure healthy competition and harm consumers.

75.98. PlaintiffPlaintiffs and the Class could not have reasonably avoided this injury.  As alleged above, Defendants' representations were deceiving to reasonable consumers like Plaintiffs.  There were reasonably available alternatives to further Defendants' legitimate business interests, such as complying with the Automatic Renewal Law and providing appropriate disclosures and an effective cancellation policy.

*Deceptive*

76.99. Defendants' acts, omissions, nondisclosures, and misleading statements, as alleged in detail above, were false, misleading, and/or deceptive to reasonable consumers.

Case No. 3:22-cv-00434-BTM-MSB

77.100.     Plaintiffs saw and relied upon Defendants' misleading representations and omissions, as detailed above.  ~~Classwide~~Class-wide reliance can be inferred because Defendants' misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Optavia products.

78.101.     Defendants' unlawful, unfair, and deceptive conduct was a substantial factor and proximate cause of damages and losses to Plaintiffs and Class members.

79.102.     As a result of Defendants' unlawful, deceptive, and unfair business practices, Plaintiffs and the Class have suffered an injury and have lost money in an amount to be determined at the trial of this action.  Plaintiffs were injured by Defendants' misconduct because it caused Plaintiffs to spend money on Optavia products that they would not otherwise have spent.

80.103.     As a result of Defendants' misconduct, pursuant to Cal. Bus. & Prof. Code §~~17203~~17603, all recurring Optavia Premier shipments are treated as unconditional gifts, and Plaintiffs and the ~~other members of the~~ Class are entitled to ~~an order: (1) requiring~~ restitution of all amounts that Defendants charged or caused to ~~make restitution be charged~~ to ~~Plaintiff and the Class; (2) enjoining Defendants from charging Plaintiff's~~Plaintiffs' and Class members' payment methods during the applicable statute of limitations and continuing until ~~such time as Defendants obtain the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosures of all automatic renewal or continuous service offer terms; and (3) enjoining Defendants from making automatic renewal or continuous service offers in the State of California that do not comply with California's Automatic Renewal Law~~Defendants' statutory violations cease.

### Count 3: Consumers Legal Remedies Act (CLRA)

81.104.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in ~~the preceding paragraphs~~Sections I-VI as if fully set forth herein.

82.105.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

32

83.106.    The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. (the "CLRA"), prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

84.107.    Plaintiffs and the Class members are "consumers" within the meaning of Cal. Civ. Code §1761(d) in that Plaintiffs and the Class members sought or acquired Defendants' services for personal, family, or household purposes.

85.108.    Optavia food products are "goods" within the meaning of Cal. Civ. Code §1761(a).

86.109.    Defendants' weight -loss coaching program constitutes "services" within the meaning of Cal. Civ. Code §1761(b).

87.110.    The purchases by PlaintiffPlaintiffs and Class members are "transactions" within the meaning of Cal. Civ. Code §1761(e).

88.111.    As alleged in detail above, DefendantDefendants violated Cal. Civ. Code §1770, subdivisions (a)(5), (a)(9), (a)(14) and (a)(16) by, *inter alia*, representing that Defendants' goods and services have certain characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

112.   As alleged in detail above, in violation of the ARL, Defendants represented Optavia products as a one-time purchase, omitted the automatic renewal disclosures required by the ARL, and failed to obtain consent to automatic renewal.

113.   Defendants' acts, omissions, nondisclosures, and misleading statements, as alleged in detail above, were false, misleading, and/or deceptive to reasonable consumers.

114.   Plaintiffs saw and relied upon Defendants' misleading representations and omissions, as detailed above.  Class-wide reliance can be inferred because Defendants'

33

misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Optavia products and services.

89.115.    As a direct and proximate result of Defendants' violations of the CLRA, Plaintiffs and the Class were wrongfully charged illegal renewal fees.

90.116.    Defendants' conduct alleged herein was undertaken by Defendants knowingly, willfully, and with oppression, fraud, and/or malice, within the meaning of Cal. Civ. Code §3294(c).

91.    Plaintiffs and members of the Class seek an injunction requiring Defendants to cease their unlawful practices.

92.117.    On about February 21, 2022, Plaintiffs provided written notice pursuant to § 1782 of the CLRA, on behalf of themselves and the Class.  Defendants failed to rectify or agree to rectify the unlawful acts detailed above within 30 days, thus Plaintiffs and the Class are entitled to actual, punitive, and statutory damages, as appropriate, as well as any other remedies the Court may deem appropriate under Cal. Civ. Code §1750 et seq.

118.    Plaintiffs were injured by Defendants' misconduct because it caused Plaintiffs to spend money on Optavia products that they would not otherwise have spent.

119.    As a result of Defendants' misconduct, pursuant to Cal. Bus. & Prof. Code §17603, all recurring Optavia Premier shipments are treated as unconditional gifts, and Plaintiffs and the Class are entitled to restitution (or damages at law) for all amounts that Defendants charged or caused to be charged to Plaintiffs' and Class members' payment methods during the applicable statute of limitations and continuing until Defendants' statutory violations cease.

### **Count 4: California Weight Loss Contract Law**

93.120.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphsSections I-VI as if fully set forth herein.

94.121.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

34

Case No. 3:22-cv-00434-BTM-MSB

95.122.     Plaintiffs' subscription with Optavia is a "weight loss contract" as used in Cal. Civ. Code §1694.5 because it is a membership to a weight loss program, formed for the purposes of providing instruction, counseling, supervision, or assistance in weight reduction, body shaping, diet, and/or eating habits.

96.123.     Defendants violated Cal. Civ. Code §1694.7(b) because the subscriptions entered into by Plaintiffs and the Class did not contain, on their face and in close proximity to the space reserved for the signature of the buyer (i.e., in close proximity to the "Checkout" button on the Checkout Page), a conspicuous statement in a size equal to at least 10-point boldface type, as follows: "You, the buyer, may cancel this agreement, without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of this contract, excluding Sundays and holidays.  To cancel this agreement, mail or deliver a signed and dated notice, or send a telegram which states that you, the buyer, are canceling this agreement," or words of similar effect.  For customers like Plaintiffs, who were enrolled by coaches, Defendants did not show them the checkout page at all.

97.124.     Plaintiffs were also not made aware, at the point of purchase or any time during the pendency of their Optavia subscriptionsubscriptions thereafter, of their right to cancel their Optavia subscriptionsubscriptions "without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of [] contract [formation]" or of how to go about invoking that right.

98.125.     Defendants also violated Cal. Civ. Code §1694.7(c) because the subscription entered into by Plaintiffs and the Class did not contain, "on the first page, in a type size no smaller than that generally used in the body of the document, the name and address of the weight loss program operator to which the notice of cancellation is to be mailed; and the date the buyer signed the contract."

99.126.     Defendants also violated Cal. Civ. Code §1694.7(d) because by enrolling Plaintiffs into perpetually auto-renewing subscriptions they violated the

35

1   requirement that "[t]he services to be rendered to the buyer under the contract shall not

2   extend for more than three years after the date the contract is entered into."

3       ~~100.~~127.      As a direct result of Defendants' unlawful conduct described above,

4   Plaintiffs suffered economic injury.  Had Optavia's checkout page complied with

5   California's Weight Loss Contracts Law, and had coaches actually shown it to Plaintiffs

6   and Class members, Plaintiffs would have been able to avoid financial injury.  If

7   Defendants had provided the required disclosures, including disclosing the auto-renewal,

8   ~~Plaintiff~~Plaintiffs would not have ~~cancelled~~purchased the product or would have canceled

9   their subscriptions within the grace period.  However, Defendants did not comply with

10  California's Weight Loss Contract Law, thereby harming Plaintiffs and the Class.  In

11  other words, Plaintiffs were injured by Defendants' misconduct because it caused

12  Plaintiffs to spend money on Optavia products that they would not otherwise have spent.

13      ~~101.~~128.      Defendants' violation of Cal. Civ. Code §§ 1694.7(b)–(d) renders the

14  subscriptions entered into by ~~Plaintiff~~Plaintiffs and the Class void and unenforceable

15  ~~such that they may be cancelled at any time.~~.  Cal. Civ. Code §1694.7(e); Cal. Civ. Code

16  §1694.9(a); Cal. Civ. Code §1694.9(d).  Because the contract is void as a matter of law,

17  Plaintiffs need not rescind to extinguish it.  In the alternative, Plaintiffs rescind the

18  contract.

19      ~~102.~~129.      Further, Defendants' unlawful conduct was willful and/or fraudulent

20  in that they knew or should have known that their enrollment process features misleading

21  statements and ~~outright~~ omissions of material information mandated by both Cal. Civ.

22  Code §1694.7(b) and California's Automatic Purchase Renewal Statute, Cal. Bus. &

23  Prof. Code §§17601, et seq., that such misrepresentations and/or omissions would and in

24  fact did induce subscribers, including Plaintiffs and the Class, to enter into weight loss

25  subscriptions with Optavia.  As such, Defendants' willful and/or fraudulent conduct

26  provides an independent basis for finding that Defendants' subscriptions with Plaintiffs

27  and the Class are void and unenforceable ~~such that they may be cancelled at any time.~~.

28  Cal. Civ. Code §1694.9(b).

103.130.    As a result, of Defendants' misconduct, pursuant to Cal. Bus. & Prof. Code §17603, all recurring Optavia Premier shipments are treated as unconditional gifts, and Plaintiffs and the Class seek recovery of actual are entitled to restitution (or damages including all membership or installment fees paid byat law) for all amounts that Defendants charged or caused to be charged to Plaintiffs' and Class members' payment methods during the applicable statute of limitations and continuing until Defendants' statutory violations cease.  Plaintiffs and the Class under their void and unenforceable subscriptions with Optavia, also seek the trebling thereof, and reasonable attorneys' fees., and all other available remedies.  Cal. Civ. Code §1694.9(c).

## Count 5: Fraud

104.131.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphsSections I-VI, as if fully set forth herein.

105.132.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

106.133.    As alleged in detail above, Defendants made a number of materially misleading statements and/or omissions in the marketing and billing of its monthly subscriptions.

107.134.    In deciding to purchase consumable products from Defendants, Plaintiffs and the Class reasonably relied on these misrepresentations and omissions to form the mistaken belief that they were making a one-time purchase, and that they could easily cancel.  But in reality, Plaintiffs were being enrolled in automatically-renewing purchases, in violation of the ARL.

108.135.    As alleged above, Defendants' fraudulent conduct was knowing and intentional.  The omissions and misrepresentations made by Defendants were intended to induce and actually induced Plaintiffs and Class members to become Optavia Premier customers.  Classwide Class-wide reliance can be inferred because Defendant'sDefendants' misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important to their purchase decision.

136.   Plaintiffs were injured by Defendants' misconduct because it caused Plaintiffs to spend money on Optavia products that they would not otherwise have spent.

~~109.~~137.   Defendants' fraud caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

138.   As a result of Defendants' misconduct, pursuant to Cal. Bus. & Prof. Code §17603, all recurring Optavia Premier shipments are treated as unconditional gifts, and Plaintiffs and the Class are entitled to restitution (or damages at law) for all amounts that Defendants charged or caused to be charged to Plaintiffs' and Class members' payment methods during the applicable statute of limitations and continuing until Defendants' statutory violations cease.

~~110.~~139.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

~~Count 6: Unjust Enrichment / Quasi-Contract~~

~~111.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.~~

~~112.   Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.~~

~~113.   As alleged in detail above, by reason of Defendants' wrongful conduct, Defendants received a direct and unjust benefit, at Plaintiffs' expense.  Defendants have benefited from receipt of improper subscription funds, and under principles of equity and good conscience, Defendants should not be permitted to keep this money.~~

~~114.   It would be unjust and inequitable for Defendants to retain the benefits of their conduct without restitution to Plaintiffs and the Class.  Accordingly, Plaintiffs and the Class are entitled to restitution.~~

~~VII~~VIII.    **Prayer for Relief.**

115.140.   Plaintiffs seek the following relief on behalf of themselves and the Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- An order appointing Plaintiffs as Class ~~Representative~~Representatives, and designating Golomb Spirt Grunfeld and Dovel & Luner as Class Counsel;
- A judgment in favor of Plaintiffs and the Class on the claims and issues raised;
- Recission;
- Restitution, disgorgement, and other just equitable relief;
- ~~An order granting all appropriate injunctive relief;~~
- Compensatory damages, the exact amount of which is to be determined at trial;
- An award of punitive damages and enhanced damages as allowed by statute;
- Pre- and post-judgment interest, costs, reasonable attorneys' fees, costs, and expenses; and
- All such other relief as the Court deems appropriate.

Dated: ~~May 16, 2022~~February 27, 2023                    Respectfully submitted,

By: */s/ Jonas B. Jacobson*

Jonas B. Jacobson (Cal. Bar No. 269912)*
jonas@dovel.com
Simon C. Franzini (Cal. Bar No. 287631)*
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

39

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Admitted to the S.D. Cal. Bar.

Kenneth J. Grunfeld, Esquire**
kgrunfeld@golomblegal.com
Kevin W. Fay, Esquire**
kfay@golomblegal.com
David A. Rosenfeld, Esquire**
drosenfeld@golomblegal.com
GOLOMB SPIRT GRUNFELD, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Phone: (215) 985-9177
Fax:   (215) 985-4169

**Admitted Pro Hac Vice

*Counsel for Plaintiffs* ~~and Proposed Class~~

40

Case No. 3:22-cv-00434-BTM-MSB