Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Stephen Andrews (Cal. Bar No. 354327)
stephen@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

[additional counsel in signature block]

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE ZELLER and ANGELICA ALPERT, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>OPTAVIA LLC,<br><br>*Defendant*. | Case No. 3:22-cv-00434 (BTM) (MSB)<br><br>**UNOPPOSED MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Dana M. Sabraw |

**Table of Contents**

I. Introduction. ........................................................................................................... 1

II. Background. .......................................................................................................... 1

    A. Plaintiffs' allegations. ................................................................................ 1

    B. Successive motions to dismiss. .................................................................. 2

    C. Parallel state action. ................................................................................... 2

    D. Settlement negotiations. ............................................................................. 3

    E. The Settlement. ......................................................................................... 3

III. The Settlement should be preliminarily approved. ............................................... 5

    A. The Court should conditionally certify the Settlement Class. .................. 6

        1. The Settlement Class satisfies the Rule 23(a) prerequisites. ........... 6

        2. The Settlement Class satisfies Rule 23(b)(3). .................................. 8

    B. The proposed Settlement is fair, adequate, and reasonable. .................... 10

        Factors 1-3: The strength of the case versus the risks ahead. ............... 10

        Factor 4: The amount of the Settlement. ................................................ 11

        Factor 5: The stage of the proceedings. ................................................. 12

        Factor 6: Counsel for both parties approve of the settlement. .............. 13

        Additional factor: Arms-length bargaining. ........................................... 13

IV. The Court should approve the Notice Plan. ....................................................... 14

V. The Court should enter the Settlement Timeline and set a Final Fairness Hearing. ......... 14

**Table of Authorities**

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
731 F.3d 952 (9th Cir. 2013) .............................................................................................. 6

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................................................... 6, 9

*Barr v. SelectBlinds LLC*,
2024 U.S. Dist. LEXIS 39068 (C.D. Cal. Mar. 4, 2024)............................................... 11

*Beer v. GoBrands, Inc.*,
2024 U.S. Dist. LEXIS 93502 (C.D. Cal. Jan. 3, 2024) .............................. 6, 7, 8, 9, 12, 13, 14

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) .................................................................................. 13

*Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008)....................................................................................... 7

*Chester v. TJX Cos.*,
2017 U.S. Dist. LEXIS 201121 (C.D. Cal. Dec. 5, 2017) ........................................... 12

*Dirienzo v. Dunbar Armored, Inc.*,
2011 U.S. Dist. LEXIS 36650 (S.D. Cal. Apr. 4, 2011)......................................... 11, 13

*Elder v. Hilton Worldwide Holdings, Inc.*,
2020 U.S. Dist. LEXIS 259476 (N.D. Cal. Apr. 29, 2020) ......................................... 12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 7, 8

*Huddlestun v. Harrison Glob., LLC*,
2018 U.S. Dist. LEXIS 133018 (S.D. Cal. Aug. 7, 2018) ............................. 6, 10, 12

*In re Hyundai and Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ............................................................................................ 5

*In re Packaged Seafood*,
2022 U.S. Dist. LEXIS 16471 (S.D. Cal. Jan. 26, 2022)....................................... 11, 13

*In re Wireless Facilities, Inc.*,
253 F.R.D. 607 (S.D. Cal. 2008) ...................................................................................... 6

*Jabbari v. Farmer*,
965 F.3d 1001 (9th Cir. 2020) .......................................................................................... 8

*Jacobo v. Ross Stores, Inc.*,
2018 U.S. Dist. LEXIS 248252 (C.D. Cal. Dec. 7, 2018) ........................................... 12

*Just Film Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) .......................................................................................... 9

*Kissel v. Code 42 Software, Inc.*,
    2017 U.S. Dist. LEXIS 223526 (C.D. Cal. Oct. 4, 2017) ............................................................ 7

*Kline v. Dymatize Enters., LLC*,
    2016 U.S. Dist. LEXIS 142774 (S.D. Cal. Oct. 13, 2016) ........................................................ 13

*Kouri v. Fed. Express Corp.*,
    2023 U.S. Dist. LEXIS 84985 (C.D. Cal. Jan. 13, 2023) ........................................................... 6

*McKnight v. Uber Techs.*,
    2021 U.S. Dist. LEXIS 177957 (N.D. Cal. Sep. 1, 2021) ........................................................ 12

*Navarrete v. Sprint United Mgmt. Co.*,
    2021 U.S. Dist. LEXIS 40398 (C.D. Cal. Mar. 2, 2021) .......................................................... 13

*Paz v. AG Adriano Goldschmeid, Inc.*,
    2016 U.S. Dist. LEXIS 191664 (S.D. Cal. Feb. 29, 2016) ................................................. 11, 13

*Petersen v. CJ Am., Inc.*,
    2016 U.S. Dist. LEXIS 140187 (S.D. Cal. Sep. 30, 2016) ....................................................... 13

*Robinson v. OnStar, LLC*,
    2020 U.S. Dist. LEXIS 10797 (S.D. Cal. Jan. 22, 2020) .......................................................... 11

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    335 F.R.D. 276 (N.D. Cal. 2020) ................................................................................................ 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................................. 5, 7

*Wahl v. Yahoo! Inc.*,
    2018 U.S. Dist. LEXIS 195287 (N.D. Cal. Nov. 15, 2018) ..................................................... 10

*Williamson v. McAfee, Inc.*,
    2016 U.S. Dist. LEXIS 116802 (N.D. Cal. Aug. 30, 2016) ............................................... 10, 12

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .................................................................................................... 7

*Xiufang Situ v. Leavitt*,
    240 F.R.D. 551 (N.D. Cal. 2008) ................................................................................................ 6

**Statutes**

28 U.S.C. § 1715(b) ............................................................................................................................ 5

**Rules**

Fed. R. Civ. P. 23 ............................................................................................ 6, 7, 8, 9, 10, 14

# MEMORANDUM OF LAW

## I. Introduction.

After over two years of litigation, successive motions to dismiss, and multiple mediation sessions with the Hon. Michael S. Berg, the Parties have reached a classwide settlement. The settlement automatically provides each Settlement Class Member with a $75 Optavia product credit, or alternatively $70 cash (at their election). Across an estimated 48,572 Settlement Class Members, this is over $3.4 million in direct benefits. Optavia has also agreed to pay fees and administrative costs on top of this relief. The settlement meets all requirements for approval. The Court should preliminarily certify the Settlement Class, approve the Settlement, appoint Class Counsel and the Class Representative, approve the Notice Plan, and enter the Settlement Timeline.

## II. Background.

### A. Plaintiffs' allegations.

The following allegations are from Plaintiffs' operative Second Amended Complaint ("SAC"). Dkt. # 44. Defendant Optavia disputed, and continues to dispute, all material allegations of the Complaint. *See* Ex. 1 (Settlement Agreement) ("Agreement") §I.

Optavia sells weight-loss products and services (like packaged meals) to consumers. SAC ¶¶ 1, 17-18. When consumers purchase Optavia product, Optavia enrolls them in an automatic renewal plan called "Optavia Premier." SAC ¶¶ 2, 19. Once enrolled, consumers are automatically shipped products and charged each month. *Id.*

California's Automatic Renewal Law ("ARL") makes it illegal for companies to charge consumers for automatically-renewing shipments of goods, unless the company meets strict disclosure requirements. SAC ¶ 12-16. Companies must clearly disclose the automatic renewal terms and obtain consumers' affirmative consent. *Id.* Companies must also provide an easy way to cancel. *Id.* at ¶ 16.

Optavia's coach program recruits ordinary consumers to market and sell Optavia products to their friends and family. SAC ¶ 18. Consumers can enroll in the Optavia Premier program either directly online or through Optavia coaches. SAC ¶¶ 2, 18. The checkout process on Optavia's website does not adequately disclose that customers are enrolling in automatically recurring

monthly subscriptions, and Optavia does not obtain consumers' affirmative consent to be so enrolled. SAC ¶¶ 22-29. Optavia trains its coaches to take consumers' payment information and place recurring subscription orders on their behalf through the Optavia website. SAC ¶¶ 30, 33. Coaches induce customers to believe they are placing one-time orders and do not disclose that customers are being enrolled in automatically recurring monthly subscriptions. SAC ¶¶ 31-33.

Plaintiffs were automatically enrolled in an Optavia Premier membership, through an Optavia coach. SAC ¶ 57-71. They did not receive adequate disclosures, did not provide affirmative consent, and were not provided an easy way to cancel. *Id.* [1]

Plaintiffs allege that Optavia violates the ARL. SAC ¶¶ 2, 20-34, 41-46. Plaintiffs asserted claims under California's False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), and Weight Loss Contract Law ("WLCL"). SAC ¶¶ 87-130. Plaintiffs also asserted a count for common law fraud. SAC ¶¶ 48-51, 131-139.

### B. Successive motions to dismiss.

On July 1, 2022, Defendants Optavia and Medifast filed motions to dismiss, Dkt. ## 17-18, which were granted in part and denied in part, Dkt. ## 38-39. On February 27, 2023, Plaintiffs filed a Second Amended Complaint. *See* Dkt. # 44. On May 26, 2023, the Parties filed a joint stipulation, dismissing Defendant Medifast, Inc. *See* Dkt. # 48. The same day, Optavia filed a second motion to dismiss. *See* Dkt. # 49. The briefing was extensive, including both a sur-reply and a further rebuttal. *See* Dkt. ## 58, 60. On March 14, 2024, the Court found that Plaintiffs had stated a claim under the CLRA and WLCL, but dismissed Plaintiffs' fraud, UCL, and FAL claims. Dkt. # 68.

### C. Parallel state action.

Following the Court's order dismissing Plaintiffs' UCL and FAL claims for lack of equitable jurisdiction, Plaintiffs filed a closely-related class action complaint against Optavia in the Superior Court of California, County of San Diego, alleging only equitable claims under the UCL

---

[1] Plaintiff Zeller is not serving as a class representative and intends to dismiss her claims. Plaintiff Alpert is serving as the Class Representative.

and FAL. *See Zeller et al. v. Optavia LLC*, Case No. 37-2024-00013298-CU-BT-CT (Cal. Sup. Ct.) (the "State Court Action").

**D. Settlement negotiations.**

This settlement was achieved via this District's Early Neutral Evaluation (ENE) process, with the Hon. Michael S. Berg. The Parties began informally discussing resolution of the case in June 2024. Jacobson Decl. ¶ 4. Leading up to the ENE, the Parties submitted mediation briefs and had a pre-conference with Magistrate Berg. *See* Dkt. # 76; Jacobson Decl. ¶ 5. The Parties then attended an all-day ENE. *See* Dkt. # 77; Jacobson Decl. ¶ 4. While the Parties did not settle, they agreed to continue negotiations. *Id.* On July 8, 2024, the Parties appeared again before Magistrate Berg, for a further ENE. *See* Dkt. # 79; Jacobson Decl. ¶ 4. Although settlement was not reached, settlement discussions remained ongoing. *See* Dkt. # 79; Jacobson Decl. ¶ 4. After further negations and assistance from Magistrate Berg, the Parties executed a binding term sheet. *Id.* On July 31, 2024, the Parties filed a Joint Notice of Settlement. *See* Dkt. # 84. Over the next two months, the Parties negotiated and finalized the Settlement Agreement. Jacobson Decl. ¶ 4.

**E. The Settlement.**

Settlement Class. The Settlement Class consists of all California customers enrolled in Optavia Premier from October 1, 2017 to March 17, 2022 and who received one automatic Optavia Premier shipment and then cancelled. Agreement § 2.27. The Settlement Class is narrower than the class proposed at SAC ¶72, and includes only those consumers who cancelled the automatic renewal, after the first automatic shipment. Consumers who are not included in the Settlement Class are not part of the settlement and are not releasing their claims. Optavia estimates that there are 48,572 Settlement Class members. *Id.*

Benefits. The Agreement requires Optavia to provide benefits to Settlement Class Member in one of two ways, at the Class Member's election. Agreement §§ III (A-B). Settlement Class Members can either: (1) file a claim and receive a cash payment of $70; or (2) do nothing, and automatically receive a $75 credit that can be used to purchase Optavia product. *Id.* In other words, Settlement Class Members automatically receive Optavia credit, and if they would prefer cash, can instead file a claim to elect cash.

To receive a cash payment, Settlement Class Members will fill out and submit a Cash Payment Election Form online. Agreement § 3.8. The Cash Payment Election Form will be conveniently available on the Settlement website. *Id.* Settlement Class Members can choose to receive cash payments through an electronic payment or in the form of a check delivered by the Settlement Administrator. Agreement § 3.9.

Optavia credits will be automatically distributed to any Settlement Class Member who does not file a cash claim form, via email. Agreement § 3.1. Credits will expire 18 months from the original date of issuance, and the credit will be applied at checkout and will be good for any Optavia product from Optavia's website. Agreement §§ 3.2-3.4. Credits can be used together with any other offers. Agreement § 3.6. The credit may be transferred to other Settlement Class Members or to an existing Optavia customer. Agreement § 3.5.

Based on Optavia's estimate of 48,572 class members, the Settlement Class will receive over $3.4 million in direct benefits (credits or cash).[2] Separate from these direct benefits, Optavia will pay Class Counsel's attorney's fees and costs of $572,000 (subject to Court approval). Agreement § V (C). Optavia will also separately cover notice and administration costs and incentive awards. Agreement §§ IV (A), 5.5.  In total, the Agreement calls for Optavia to provide over $4 million in benefits to the Settlement Class (inclusive of direct benefits, fees, and costs).

<u>Release</u>. The Agreement calls for a release of only those claims that "aris[e] out of or [are] related to the allegations in the State Court Action Complaint and the Complaints filed in this action." Agreement § 2.23.

<u>Attorney Fees, Costs, and Incentive Awards</u>. The Agreement permits Class Counsel to apply to the Court for its reasonable attorneys' fees and expenses in an amount not to exceed $572,000. Agreement § 5.3.  The Settlement also allows Plaintiffs' Counsel to request a service award of

---

[2] The value of the credit is over $3.6 million (48,572 x $75). Using the cash claim value ($70), the value is over $3.4 million (48,572 x $70).

$2,000 for Plaintiff Alpert. Agreement § 5.5. Class Counsel will apply for fees, costs, and the incentive award in a separate motion, pursuant to the schedule in the Settlement Agreement.

<u>Notice and Administration</u>. In consultation with Plaintiff, Optavia selected Apex as the Settlement Administrator. Jacobson Decl. ¶7. Apex is an experienced and qualified settlement administrator. Hartranft Decl. ¶¶1-6. Optavia will provide the Settlement Administrator with a Class List consisting of the identities of the Settlement Class Members as well as their contact information. Agreement § 4.3, 4.7. The Settlement Administrator will provide direct email notice to all Settlement Class Members. Agreement § 4.3; Hartranft Decl. ¶¶ 9-13. For Settlement Class Members whose email notices are returned as undeliverable but a forwarding address is provided, the Settlement Administrator will re-send the Notice to that Settlement Class Member. Agreement § 4.5; Hartranft Decl. ¶¶ 9-13. If the original email notice is returned as undeliverable and a forwarding address is not provided, the Settlement Administrator will send a postcard notice via first class U.S. mail, postage pre-paid to the California shipping address provided by Optavia and associated with the Settlement Class Member's most recent purchase. Agreement § 4.6; Hartranft Decl. ¶¶ 9-13.

The Settlement Administrator will also create a Settlement Website, which will include the Notice, the Cash Payment Election Form, and relevant filings and other documents related to this Settlement. Agreement § 2.28, 4.8; Hartranft Decl. ¶ 9. The website will also provide a toll-free telephone number to address Class member questions. Agreement § 4.9; Hartranft Decl. ¶ 9.

Pursuant to the Class Action Fairness Act ("CAFA"), Optavia will also serve notice in accordance with the requirements of 28 U.S.C. § 1715(b). Agreement § 4.10.

### III. The Settlement should be preliminarily approved.

The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). When analyzing preliminary approval, the Court first determines whether a Rule 23 settlement class may be conditionally certified. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Court then considers whether a proposed settlement is "fundamentally fair, adequate, and reasonable." *Id.* at 959. We address each step in turn.

### A. The Court should conditionally certify the Settlement Class.

"Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes." *In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 610 (S.D. Cal. 2008); *see* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), § 11.27 (4th ed. 2002). To conditionally certify a class, the Court must determine that the Settlement Class satisfies the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, the Settlement Class meets all requirements.

### 1. The Settlement Class satisfies the Rule 23(a) prerequisites.

<u>Numerosity</u>. Rule 23(a)(1) is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no numerical cutout for sufficient numerosity, generally 40 or more members will satisfy the numerosity requirement." *Kouri v. Fed. Express Corp.*, 2023 U.S. Dist. LEXIS 84985, at *9 (C.D. Cal. Jan. 13, 2023) (quotes omitted). Here, the Settlement Class consists of approximately 48,572 class members. Agreement § 2.27.

<u>Commonality</u>. Rule 23(a)(2) requires questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quotes omitted). Commonality is "easily satisf[ied]" where class members "all base their claims on the same legal theory." *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2008); *see Huddlestun v. Harrison Glob., LLC*, 2018 U.S. Dist. LEXIS 133018, at *7-8 (S.D. Cal. Aug. 7, 2018) (Sabraw, J.).

Here, Settlement Class Members' claims all stem from the same factual circumstances: all Settlement Class Members enrolled in Optavia Premier while residing in California. Agreement § 2.27. And all Settlement Class Members assert the same core legal theory: that Optavia violated the Automatic Renewal Law. *See generally* SAC. "Under the circumstances . . . plaintiff has satisfied the commonality requirement." *Beer v. GoBrands, Inc*., 2024 U.S. Dist. LEXIS 93502, at *14 (C.D. Cal. Jan. 3, 2024) (finding commonality requirement met in Automatic Renewal Law class action

6

based on similar common questions); *Kissel v. Code 42 Software, Inc.*, 2017 U.S. Dist. LEXIS 223526, at *4 (C.D. Cal. Oct. 4, 2017) (same).

Typicality. Rule 23(a)(3) requires the class representative's claims or defenses to be "typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3); *see Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). This standard is "permissive"—claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff Alpert, like all other Settlement Class Members, purchased an Optavia Premier membership, was automatically charged for a renewal, and then cancelled after the first automatic renewal. SAC ¶¶ 66-70; Alpert Decl. ¶¶ 2-4. And Ms. Alpert's claims "are based on the same legal theory" as the Settlement Class Members' claims, including "that defendant violated the ARL." *GoBrands, Inc.*, 2024 U.S. Dist. LEXIS 93502, at *15. So Plaintiff Alpert's claims "arose from the same . . . course of conduct that gave rise to the claims of other class members, thus satisfying the typicality requirement." *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284 (N.D. Cal. 2020).

Adequacy. Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts measure adequacy using two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

Plaintiff Alpert has no conflicts with Settlement Class members. Alpert Decl. ¶ 5. And she has vigorously prosecuted this case on behalf of the Settlement Class. She provided facts concerning her own purchase; reviewed the complaints and consulted with counsel on her experience with Optavia; consulted with counsel in the lead up to mediation; made herself available during the mediation for any questions that might arise; discussed the mediation and potential

classwide resolution with counsel; evaluated and agreed to the resolution; and reviewed and agreed with the terms of the Agreement. Alpert Decl. ¶ 2-6.

Plaintiffs' counsel—Dovel & Luner LLP and Golomb Legal P.C.—have also vigorously prosecuted this case. Counsel has significant experience litigating complex class actions. Jacobson Decl. ¶ 3; Fay Decl. ¶3. Counsel drafted the original complaint and two amended complaints, defeated two motions to dismiss by Optavia, drafted and filed the complaint in the parallel State Court Action, drafted and served document requests and interrogatories, and spent months negotiating the classwide settlement. Jacobson Decl. ¶ 8.

In sum, Plaintiff Alpert and Plaintiffs' Counsel are adequate.

### 2. The Settlement Class satisfies Rule 23(b)(3).

Under Rule 23(b)(3), conditional certification is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) asks whether (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the proposed Settlement Class meets both requirements.

<u>Common questions predominate.</u> "[T]he general rule [is] that predominance is easier to satisfy in the settlement context." *Jabbari v. Farmer*, 965 F.3d 1001, 1006 (9th Cir. 2020). "To determine whether a class satisfies the [predominance] requirement, a court pragmatically compares the quality and import of common questions to that of individual questions." *Id.* at 1005. "If a common question will drive the resolution [of the litigation], even if there are important questions affecting only individual members, then the class is sufficiently cohesive to warrant adjudication by representation." *Id.* (internal quotes omitted).

In ARL class actions like this one, "common questions predominate over individual questions." *GoBrands, Inc.*, 2024 U.S. Dist. LEXIS 93502, at *19 (finding predominance satisfied in a similar ARL case). Settlement Class Members' claims all stem from the same factual circumstances and legal theories. All Settlement Class Members enrolled in Optavia Premier while residing in California, were charged for an automatic renewal once, and then subsequently cancelled

their membership. Agreement § 2.27. And there "is an overriding common question as to whether defendant failed to comply with the procedures mandated by the ARL" *GoBrands, Inc.*, 2024 U.S. Dist. LEXIS 93502, at *19 (collecting cases in the ARL context). "Finally, the relief sought applies to all class members and is traceable to plaintiff's liability case." *Id.* at *20. Commonality is satisfied.

<u>Superiority.</u> The superiority requirement asks whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class actions are superior where the "risks, small recovery, and relatively high costs of litigation make it unlikely that plaintiffs would individually pursue their claims." *Just Film Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (quotes omitted). Here, Optavia's products cost at most a few hundred dollars. *See, e.g.*, FAC ¶ 2. So, "[t]he alternative method of resolution—pursuing individual claims for a relatively modest amount of damages—would likely never be brought as litigation costs would dwarf potential recovery." *GoBrands, Inc.*, 2024 U.S. Dist. LEXIS 93502, at *21 (quotes omitted). Thus "the class members" have little "interest[] in individually controlling the prosecution or defense of separate actions." *Id.* at *20 (quotes omitted). The filing of separate suits by potentially thousands of other class members "would create an unnecessary burden on judicial resources." *Id.* at *23 (quotes omitted). And "there is no indication that any class member is involved in any other litigation concerning the claims in this case." *Id.* at *22; *see* Fed. R. Civ. P. 23(b)(3)(B).

Plus, "a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see GoBrands, Inc.*, 2024 U.S. Dist. LEXIS 93502, at *22-23 (collecting cases). Thus, "[t]he only factors in play here weigh in favor of class treatment." *Id.* at *23. A class action is superior.

\* \* \*

The Settlement Class satisfies all requirements of Rule 23(a), as well as Rule 23(b)(3), and should be conditionally certified.

### B. The proposed Settlement is fair, adequate, and reasonable.

"The court must also make a preliminary determination as to whether the proposed settlement is 'fair, reasonable, and adequate' pursuant to Federal Rule of Civil Procedure 23(e)(2)." *Huddlestun*, 2018 U.S. Dist. LEXIS 133018, at *5 (quotes omitted). As relevant here, this determination involves a consideration of:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; [3]

*Id.* at *12-13 (quotation marks omitted).

**Factors 1-3: The strength of the case versus the risks ahead.**

Plaintiffs' claims had substantial merit and survived two motions to dismiss. But there was a long road ahead, with substantial risks. Optavia vigorously contests liability and asserted multiple defenses, including (among other defenses): (1) that its coaches were not its agents; (2) that its coaches complied with the Automatic Renewal Law; and (3) that no class could be certified. Jacobson Decl. ¶ 5; Fay Decl. ¶ 4. As in other ARL cases, "multiple factors will contribute to a lengthy litigation," including "Defendant's policies regarding auto-renewal pricing[.]" *Williamson v. McAfee, Inc.*, 2016 U.S. Dist. LEXIS 116802, at *18 (N.D. Cal. Aug. 30, 2016); *see Wahl v. Yahoo! Inc.*, 2018 U.S. Dist. LEXIS 195287, at *12-13 (N.D. Cal. Nov. 15, 2018) (finding risks of continued litigation in the ARL context weighed in favor of fairness finding); *Huddlestun*, 2018 U.S. Dist. LEXIS 133018, at *21 (finding factor weighed in favor of approving settlement because defendants denied any wrongdoing and had defenses to liability). And as the Court has recognized, "litigation is always expensive, and both sides would bear those costs if the litigation continued,"

---

[3] Two additional factors are not relevant here: (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement.

which "weighs in favor of preliminary approval." *Paz v. AG Adriano Goldschmeid, Inc.*, 2016 U.S. Dist. LEXIS 191664, at *13 (S.D. Cal. Feb. 29, 2016).

This case posed special risks for certification, because it depends, in part, on oral representations from Optavia coaches. *See Robinson v. OnStar, LLC*, 2020 U.S. Dist. LEXIS 10797, at *52-54 (S.D. Cal. Jan. 22, 2020) (denying certification in an ARL case based on oral representations). This further weighs in favor of settlement approval. *See In re Packaged Seafood*, 2022 U.S. Dist. LEXIS 16471, at *57 (S.D. Cal. Jan. 26, 2022) (Sabraw, J.); *Dirienzo v. Dunbar Armored, Inc.*, 2011 U.S. Dist. LEXIS 36650, at *6 (S.D. Cal. Apr. 4, 2011) (Sabraw, J.).

Finally, if Plaintiffs succeeded in certifying a litigation class, there remained summary judgment, trial, and appeal. *See In re Packaged Seafood Prods. Antitrust Litig.*, 2022 U.S. Dist. LEXIS 16471, at *57 ("The risk of any appeal after trial also weighs in favor of settlement approval.") (Sabraw, J.).

Given the early stage of the case and the substantial risks still ahead, the settlement is an excellent outcome for the Settlement Class.

**Factor 4: The amount of the Settlement.**

As described above, every Settlement Class Member will automatically receive $75 in product credit, with the option to instead receive $70 in cash. *See* Section II.E above. For Settlement Class Members, who were only automatically shipped one box before cancelling (*see id.*) this is approximately 20% of the price of the entire box. *See* SAC ¶ 69 (Alpert's box cost about $360). The Agreement requires that Optavia provide over $3.5 million in direct credit and cash benefits to Settlement Class Members, and over $4 million in benefits when you include fees and costs. *See* Section II.E above.

The Settlement provides benefits to every class member automatically, in credit, without the need to make a claim. *See Barr v. SelectBlinds LLC*, 2024 U.S. Dist. LEXIS 39068, at *26 (C.D. Cal. Mar. 4, 2024) (finding fact that "Class Members receive relief automatically" to weigh in favor of the amount of the settlement). The credit is more than sufficient to buy over 70 (non-subscription) products currently on the Optavia website. Jacobson Decl. ¶ 9. The credit is good for 18 months, it can be used with other offers, and it can be transferred. *See* Section II.E above.

And for those Settlement Class members that prefer cash, they can elect $70 in cash instead. So "there is no risk of their being forced to spend 'more' of their own money at all, much less on the defendant's product." *McKnight v. Uber Techs.*, 2021 U.S. Dist. LEXIS 177957, at *14 (N.D. Cal. Sep. 1, 2021). This cash option is worth over 93% of the credit option. *See Jacobo v. Ross Stores, Inc.*, 2018 U.S. Dist. LEXIS 248252, at *16 (C.D. Cal. Dec. 7, 2018) (preliminarily approving a settlement that allowed class members to redeem settlement vouchers for 75% of their value in cash); *Chester v. TJX Cos.*, 2017 U.S. Dist. LEXIS 201121, at *6 (C.D. Cal. Dec. 5, 2017) (same). Plus, because the cash payment in this case is $70, there is a significant incentive for Class Members to fill out the easily accessible online Cash Payment Election Form if they prefer to get cash. *See Elder v. Hilton Worldwide Holdings, Inc.*, 2020 U.S. Dist. LEXIS 259476, at *13 (N.D. Cal. Apr. 29, 2020) (explaining that a "$25 or $50 cash option is much more likely to justify the transaction costs of filing a claim" than a smaller cash option). The cash option further confirms that this is not a coupon settlement. *See Williamson v. McAfee, Inc.*, 2017 U.S. Dist. LEXIS 15838, at *4 (N.D. Cal. Feb. 3, 2017) (settlement was "not a coupon settlement," because "class members had the option to receive cash instead of value certificates, even though they received certificates by default"); *McKnight*, 2021 U.S. Dist. LEXIS 177957, at *24 n.9 (holding that settlement was not a coupon settlement because cash members could elect to receive cash rather than a voucher); *GoBrands*, 2024 U.S. Dist. LEXIS 93502, at *25 n.6 (same).

The settlement equitably distributes the same amount to each class member, as they were all automatically charged for one box. *See* Section II.E above (the class only includes customers who cancelled after automatically receiving one box); *see Huddlestun*, 2018 U.S. Dist. LEXIS 133018, *15 (considering whether the formula for distribution was reasonably equitable). In sum, the Settlement provides significant benefits to the Settlement Class. This factor favors approval.

**Factor 5: The stage of the proceedings.**

While no formal discovery had occurred at the time of the settlement, the case had gone through multiple rounds of motion-to-dismiss briefing. The Parties reached settlement only after lengthy negotiations and several meetings before Magistrate Berg, and they had sufficient information about the key disputed factual and legal issues. Jacobson Decl. ¶¶ 4-6; Fay Decl. ¶ 6.

Accordingly, "this factor supports preliminary approval." *Dirienzo*, 2011 U.S. Dist. LEXIS 36650, *8; *Paz*, 2016 U.S. Dist. LEXIS 191664, at *14-15.

### Factor 6: Counsel for both parties approve of the settlement.

"[R]epresentation by competent counsel familiar with the law in the relevant area and with the strengths and weaknesses of the parties' respective positions, suggests the reasonableness of the settlement." *Navarrete v. Sprint United Mgmt. Co.*, 2021 U.S. Dist. LEXIS 40398, at *30 (C.D. Cal. Mar. 2, 2021) (cleaned up). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

Plaintiffs' Counsel is experienced in both complex class actions and Automatic Renewal Law cases. Jacobson Decl. ¶ 3; Fay Decl. ¶ 3. Based on Counsel's experience, and weighing the strengths and weaknesses of the case, Plaintiffs' counsel concluded that the settlement is fair and reasonable. Jacobson ¶¶ 5-6; Fay Decl. ¶ 5-10. Optavia also agrees that the settlement is fair and reasonable. Agreement § 8.19. So this factor weighs in favor of approval. *See Dirienzo*, 2011 U.S. Dist. LEXIS 36650, at *9 (finding that this factor weighs in favor of approval because "[b]oth Class Counsel and Defendant's counsel are of the opinion that the settlement is fair, reasonable, and adequate") (Sabraw, J.); *In re Packaged Seafood*, 2022 U.S. Dist. LEXIS 16471, at *60 (same).

### Additional factor: Arms-length bargaining.

Courts—including this Court—find that proposed settlements are "the product of arm's-length bargaining" where the settlement is "reached with the assistance of an experienced mediator[.]" *Kline v. Dymatize Enters., LLC*, 2016 U.S. Dist. LEXIS 142774, at *14 (S.D. Cal. Oct. 13, 2016); *GoBrands, Inc.*, 2024 U.S. Dist. LEXIS 93502, at *23-24 (finding arm's-length negotiation where parties exchanged sensitive information and reached agreement with the help of an experienced mediator); *Petersen v. CJ Am., Inc.*, 2016 U.S. Dist. LEXIS 140187, at *9 (S.D. Cal. Sep. 30, 2016) (finding assistance of Magistrate in mediation sessions "warrant[ed] a presumption in favor of [final] approval") (Sabraw, J.). Here, as described above, Magistrate Berg oversaw the extensive negotiations leading to the Parties' settlement agreement. *See* Section II.D above. This confirms that the Agreement was the result of arms-length negotiations and favors approval.

\* \* \*

Because all factors favor approval, the Court should preliminarily find the settlement fair, reasonable, and adequate.

**IV.     The Court should approve the Notice Plan.**

Under Rule 23(e)(1), a "court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Notice must be the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed Notice Plan meets this requirement.

The Settlement Administrator (Apex) has substantial administration experience. Hartranft Decl. ¶¶ 1-6. As described above (Section II.E), all Settlement Class Members will receive direct notice using the email address Optavia has on file (or if that fails, using the mailing address Optavia has on file). Apex will also establish a Settlement Website, where Settlement Class Members can review relevant documents, see deadlines, and submit cash claims. The website will include a toll-free hotline to address class member questions.

The notices are drafted in plain English and provide all relevant information about the case, the Settlement, and Settlement Class Members' rights. *See* Ex. 2 (long-form notice); Ex. 3 (postcard notice).

This notice program provides the best practicable notice, under the circumstances. Hartranft Decl. ¶ 8; *see GoBrand*s, 2024 U.S. Dist. LEXIS 93502, at *31 (approving a similar direct email notice plan in an ARL case).

**V.    The Court should enter the Settlement Timeline and set a Final Fairness Hearing.**

The Parties agreed on the following timeline for settlement events. Agreement § 5.10. This timeline provides reasonable periods for notice, claims, opts-out, and objections:

| Item | Deadline |
|---|---|
| Optavia provides list of Class Members to the Settlement Administrator | 14 days after Preliminary Approval |
| Notices Posted on Settlement Website | 14 days after Preliminary Approval |
| Notice Deadline | 30 days after Preliminary Approval |
| Objection/Exclusion Deadline | 60 days after Notice Deadline |
| Settlement Administrator Provide List of Objections/Exclusions to the Parties' counsel | 10 days after the Objection/Exclusion Deadline |
| Cash Claim Deadline | 75 days after Notice Deadline |

| Item | Deadline |
|---|---|
| Plaintiffs' Motion for Attorneys' Fees and Incentive Awards | 30 days after Notice Deadline |
| Motion for Final Approval | 14 days before the Final Fairness Hearing |
| Final Fairness Hearing | The Parties shall request that the Court hold a Final Fairness Hearing within 135 days after the Notice Deadline, or as soon as practicable thereafter |

\*   \*   \*

The settlement meets all criteria for preliminary approval. The Court should preliminarily certify the Settlement Class, approve the Settlement, appoint Class Counsel and the Class Representative, approve the Notice Plan, and enter the Settlement Timeline. A proposed order is attached.

Date: September 24, 2024

Respectfully submitted,

By:  /s/ Jonas B. Jacobson

Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Stephen Andrews (Cal. Bar No. 354327)
sandrews@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Kevin W. Fay, Esquire\*\*
kfay@golomblegal.com
GOLOMB LEGAL P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Phone: (215) 985-9177
Fax:    (215) 985-4169

\*\*Admitted Pro Hac Vice

*Counsel for Plaintiffs*